GULF, COLORADO & SANTA FE RAILWAY COMPANY ET AL. v. NORTH TEXAS GRAIN COMPANY ET AL.

Decided May 2, 1903.

**1.—Plea of Privilege—Grounds of Jurisdiction Not Negatived.**

Where a defendant's plea of privilege failed to negative allegations in the petition charging that he acted jointly with the other defendants both in converting the property for the price of which the suit was brought and in undertaking to collect a draft for such price, and negligently failing to do so, he was properly held to have submitted to the jurisdiction of the court in these respects, and so was in court for all the purposes of the case.

**2.—Banks—Collection of Draft—Negligence—Surrender of Bill of Lading.**

Where plaintiffs consigned a car load of oats to shipper's orders, attaching draft for the price to the bill of lading and making payment a prerequisite to the surrender of the bill or delivery of the oats, and a bank holding the draft for collection surrendered the bill of lading to the buyer and he, after examining the oats thus placed under his control, refused to take them, and it appeared that he would have paid the draft but for such unauthorized surrender of the bill of lading, the bank was liable to plaintiff for the amount of the draft, less the freight charges.

**3.—Same—Conversion by Carrier—Freight Charges—Election.**

The oats having been converted by the railway company through an illegal sale for the freight charges, plaintiff could not, since it had elected to hold the bank liable for negligence in failing to collect the draft, hold the railway company liable for conversion, but such right existed on the part of the bank.

**4.—Carriers of Freight—Act of God.**

The freight on the oats not having been paid at the point of destination, it was not negligence for the railway company to take them over to Galveston, fourteen miles distant, for storage there, and for damage to them there caused by the great storm, an act of God, the carrier was not responsible.

**5.—Same—Conversion—Illegal Sale for Freight Charges—Notice.**

The carrier having sold the oats for the freight charges due thereon without giving the notice required by the statute in such cases, the sale was illegal and rendered the carrier liable as for conversion. Rev. Stats., art. 328.

Appeal from the County Court of Collin. Tried below before Hon. J. H. Faulkner.

*J. W. Terry, Ballinger Mills, J. M. Pearson,* and *Jenkins & McClellan,* for appellants.

*Abernathy & Abernathy, J. R. Gough,* and *Abernathy & Mangum,* for appellees.

TEMPLETON, Associate Justice.—Jules Perthuis, of Hitchcock, Texas, bought a car load of oats from the North Texas Grain Company, of McKinney, Texas. He agreed to pay 27 cents per bushel for the oats delivered at Hitchcock. The grain was billed out from Quinlan, Texas, on August 3, 1900, and was transported by the Midland Railroad to Paris, and by the Santa Fe Railway Company from Paris to Hitchcock. Felton Bros., from whom the grain company had bought the oats, appeared in the bill of lading to be the consignors, and the grain was consigned to the shipper's order. The bill of lading was sent to the grain company, and on August 4, 1900, the company drew a sight draft on Perthuis for $242.62, the contract price of the oats. The bill of lading, properly indorsed, was attached to the draft, which was then delivered by the grain company to the Collin County National Bank, of McKinney, for collection. Perthuis had directed the grain company to draw on him through Adoue & Lobit, his bankers at Galveston, and in compliance with such request the grain company had the McKinney bank to send the draft, with bill of lading attached, to Adoue & Lobit. Upon receipt of the draft and bill of lading, Adoue & Lobit sent the same by mail to Perthuis. The agent of the railway company at Hitchcock offered to deliver the oats to Perthuis upon payment of the freight charges. The draft directed the bank to accept the expense bill as a cash item, in other words, to allow credit on the draft for the freight charges paid by the drawee. Perthuis complains that there was a mistake in weights, and that the freight charges demanded were excessive. After some negotiations, it was agreed between Perthuis and the agent that the car should be opened and the oats reweighed. When the car was opened, Perthuis examined the oats and set up a claim that the same were not of the grade guaranteed by the grain company. He had surrendered the bill of lading to the agent of the railway company and promised to pay the freight charges. After examining the oats, he refused to pay the said charges and declined to take the oats. He returned the draft to Adoue & Lobit, and they sent the same back to the McKinney bank, and it was turned over to the grain company by the bank. The railway company requested both Perthuis and the grain company to give directions for the disposition of the oats, which both refused to do. The railway company finally hauled the oats to Galveston, and stored the same in a warehouse there on September 7, 1900. The great storm occurred the next day, and the oats were thereby dam-

aged. On November 7, 1900, the railway company had the oats sold at public auction to pay the freight and other charges which had accumulated. After paying said charges and the expenses of the sale, out of the proceeds of the sales there remained the sum of $76.22. Subsequently, the grain company brought this suit in the County Court of Collin County against the railway company, the Collin County bank, Adoue & Lobit and Perthuis. Adoue & Lobit and Perthuis were residents of Galveston County, and filed pleas to the jurisdiction of the court, setting up their privilege to be sued in the county of their residence. The pleas were overruled, and the cause tried on its merits before the court without the intervention of a jury. Judgment was rendered in favor of the grain company against the railway company and Adoue & Lobit for $206.15, and in favor of Adoue & Lobit and Perthuis against the railway company for the same amount. The grain company recovered nothing against the Collin County bank or Perthuis. The railway company and Adoue & Lobit have appealed.

Adoue & Lobit can not complain of the action of the trial court in overruling their plea of privilege. It was charged in the petition that the Collin County National Bank and Adoue & Lobit jointly undertook to collect the draft and negligently failed to do so, and also that the railway company, Adoue & Lobit and Perthuis, acting together, converted the oats. The plea of privilege did not negative these charges, and Adoue & Lobit must be held to have consented to litigate the issues thereby raised on their merits in the court where the suit was brought. Having submitted to the jurisdiction of that court in those respects, they were in court for all purposes, and were bound to answer the whole case of the plaintiffs. Several grounds of liability on the part of Adoue & Lobit were alleged in the petition, and they could not require the case to be tried in Collin County upon only such of the grounds as they chose to litigate in that jurisdiction.

Judgment was properly rendered in favor of the grain company against Adoue & Lobit for $206.15, the amount of the draft less the freight charges. They were guilty of negligence in sending the bill of lading to Perthuis without having received payment of the draft. Until he had paid the draft, Perthuis had no right whatever to the oats or the bill of lading. The oats were consigned to the shipper's order, and the consignors were entitled to impose such conditions precedent to the delivery of the same as they saw proper. The grain company made payment of the draft by Perthuis a prerequisite to the surrender of the bill of lading or the delivery of the goods. When Adoue & Lobit sent the bill of lading to Perthuis they placed the disposition of the oats under his control. They thereby violated their duty to the grain company and became chargeable with the amount of the draft. They trusted Perthuis at their own risk, and must abide the consequences. The finding of the trial court that but for the action of Adoue & Lobit in sending the bill of lading to Perthuis, he would have paid the draft and accepted the oats, is reasonable, and is supported by the evidence.

The trial court erred in rendering judgment in favor of the grain company against the railway company. Having elected to hold Adoue & Lobit responsible for their negligence in failing to collect the draft, and for their unauthorized act in surrendering control over the oats to Perthuis, the grain company can not complain of the conversion thereafter of the oats by the railway company.

The railway company can not, however, escape responsibility altogether. It was authorized, under the provisions of article 327, Revised Statutes, to sell the oats to pay the charges which had accrued against the same, but was bound to give notice of the sale as prescribed by article 328. It failed to give such notice, and the sale made was therefore illegal. We think it follows that the railway company thereupon became liable to the owner of the oats as for a conversion of the property. The statute has superseded the common law rule on the subject, and that rule can not be invoked to validate a sale which is void under the statute. As the oats did not belong to the perishable class, article 331, which provides for a sale of perishable freight on five days notice, is not applicable.

The railway company contends that it should not be held responsible for the damage to the oats caused by the unprecedented storm. The contention is unquestionably well taken, unless the removal of the oats from Hitchcock to Galveston will preclude the railway company from asserting it. We are of opinion that, if proper storage facilities did not exist at Hitchcock, the railway company was justified in taking the oats to Galveston, which was only fourteen miles away. And we think the evidence in the case is not such as would warrant the conclusion that the railway company failed to exercise due care in selecting Galveston as a place to store the oats. The contention of the railway company on this score is therefore sustained.

The value of the oats at the time of the conversion thereof by the railway company was $164.29. The charges against the oats for freight, demurrage and storage amounted to $70.67, and the railway company is entitled to have such charges deducted from the value of the oats, when converted, which would leave a balance of $93.62 owing by it to the owner of the property. The sale being illegal, the expenses attending the same would not be a proper charge against the oats.

As before stated, the trial court awarded judgment in favor of Adoue & Lobit and Perthuis against the railway company for the value of the oats in their undamaged condition, less the freight charges. The judgment should have been in favor of Adoue & Lobit alone for the value of the oats in their damaged state, less the freight, demurrage and storage charges, the damage having occurred and the charges having accrued before the conversion. By becoming responsible to the grain company for the purchase price of the oats, the equitable right thereto passed to Adoue & Lobit, and they are the proper parties to complain of the conversion.

The grain company is not complaining of its failure to recover

against Perthuis and the Collin County Bank, and in that respect the judgment is affirmed. The judgment in favor of the grain company against Adoue & Lobit is also affirmed. The judgment in favor of the grain company and Perthuis against the railway company is reversed, and judgment is here rendered that said first named company and Perthuis take nothing against said last named company. The judgment in favor of Adoue & Lobit against the railway company will be reformed by reducing the amount of the same from $206.15 to $93.62. The net proceeds of the sale of the oats, amounting to $76.22, which has been deposited by the railway company in the registry of the court below should be paid to Adoue & Lobit and credited on their judgment for $93.62 against the railway company, and the court below, on return of the mandate herein, is directed to enter an order to that effect. The costs of this appeal are taxed equally against the grain company and Adoue & Lobit. The costs of the court below which were incurred by reason of the Collin County bank and Perthuis having been made parties defendant are taxed against the grain company. The other costs incurred in the County Court are taxed equally against the railway company and Adoue & Lobit.

*Judgment reformed.*