MOSHER MFG. CO. v. EASTLAND, W. F. & G. R. CO. (No. 1584.) *

(Court of Civil Appeals of Texas. El Paso. Feb. 21, 1924. Rehearing Denied March 6, 1924.)

1. Election of remedies ⊂⇒1, 14—Doctrine of "election of remedies" stated.

An "election of remedies" arises when one having two coexistent but inconsistent reme-dies chooses to exercise one, in which event he loses the right to thereafter exercise the other.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Election.]

2. Election of remedies ⊂⇒1—Doctrine, application of law of estoppel.

The doctrine of the election of remedies is an application of law of estoppel either in pais or of record.

3. Election of remedies ⊂⇒3(2), 15 — Seller might affirm unauthorized delivery and sue buyer, but action against buyer precluded subsequent action against carrier.

Where railroad delivered goods to buyer without surrender of bills of lading and payment of drafts attached thereto, the seller could ratify or waive the unauthorized delivery of goods to buyer and sue buyer for balance due on contract price or could sue the railroad for the amount of the drafts, and its election to sue buyer for balance due and to foreclose lien filed to secure payment thereof precluded it from subsequently suing the railroad on failure to obtain full satisfaction in such action against buyer, since the remedies against the buyer and against the railroad are inconsistent; the action against the buyer being ex contractu, and the one against the railroad being ex delicto, and it not being possible to say with certainty that the choice by the seller of his remedy against the buyer did not prejudice rights which the railroad would have had if the suit had been against it.

4. Subrogation ⊂⇒11—Right of subrogation of carrier on being held liable to shipper for unauthorized delivery, stated.

In a shipper's action against a railroad for damages caused by railroad's unauthorized delivery of goods to consignee without surrender of bills of lading and payment of drafts attached thereto, the railroad, if held responsible for the amount of drafts, would be subrogated to the shipper's rights against consignee for such amount, and could maintain a cross-action and recover over against consignee.

5. Election of remedies ⊂⇒3(1)—Election to sue one joint tort-feasor does not preclude subsequent suit against other.

In case of active tort-feasors, jointly or severally liable, a suit and uncollected judgment based upon the tort against one does not bar a subsequent suit against the other, since the remedies are consistent and may be concurrently or successively maintained until satisfaction has been finally had.

6. Contribution ⊂⇒5—No right as between active joint tort-feasors.

There is no right of contribution between active joint tort-feasors.

Appeal from District Court, Eastland County; Geo. L. Davenport, Judge.

Suit by the Mosher Manufacturing Company against the Eastland, Wichita Falls & Gulf Railroad Company, in which the Harrell Pipe Line Company intervened. Judg-

ment for defendant against plaintiff, and plaintiff appeals. Affirmed.

Turner & Seaberry, of Eastland, and Holloway & Holloway, of Dallas, for appellant.

Scott, Brelsford, Funderburk & Ferrell, of Eastland, for appellee.

HIGGINS, J. On January 26, 1921, appellant brought this suit against appellee Eastland, Wichita Falls & Gulf Railroad Company, in substance setting up that in April, 1920, it shipped three steel tanks from Houston Heights, Tex., to Eastland, Tex., for which the initial carrier issued three bills of lading to the order of appellant notify Harrell Pipe Line Company (hereinafter called pipe line company), which bills provided for the delivery of the tanks upon surrender of the bills properly indorsed; that it drew three sight drafts aggregating $7,500 upon the pipe line company, indorsed the bills to the order of the pipe line company, attached same to the drafts, and forwarded same to Eastland for collection; that the terminal carrier Eastland, Wichita Falls & Gulf Railroad Company delivered the tanks to the pipe line company without surrender of the bills of lading, and the drafts had never been paid. Judgment was sought for the amount of the drafts with interest.

The railroad company defended upon the ground that the appellant had elected to pursue its remedy against the pipe line company for the purchase price of the tanks and was thereby precluded from pursuing any remedy it might have had against the railroad company.

The receiver of the pipe line company intervened in the suit, but the intervention need not be further noticed, as judgment adverse to him was rendered and no appeal taken.

The above-stated allegations of the petition were shown to be true. The facts shown upon the defendant's plea are undisputed, and are as follows:

In January, 1920, appellant entered into a written contract with the pipe line company whereby the former agreed to sell to the latter the three tanks mentioned in the petition, also three smaller tanks and a condensor box for the sum of $19,160, payable $4,500 in cash, $7,500 payable upon delivery at Eastland, and the balance in 30 days. On October 22, 1920, appellant fixed a materialman's lien upon the refining plant of the pipe line company by filing in the county clerk's office of Eastland county its written contract and affidavit setting up the delivery of the above-described material for said agreed price and an additional item of $120 for extras furnished without a written contract. The account attached to the affidavit showed a balance due of $11,764.11. The affidavit concludes as follows:

"That all of said materials and machinery were so used in the construction of the said plant, but that certain of said materials and machinery of the price and value of $7,500 were improperly delivered by the Ringling, Eastland & Gulf Railway Company to the said Harrell Pipe Line & Refining Company, contrary to the mode of shipment, and without the previous payment of the said $7,500 therefor, said materials having been shipped to the order of the Mosher Manufacturing Company with bills of lading and drafts attached. This claim of lien is therefore made without prejudice and without waiving the right to claim the said sum of $7,500 against said railway company.

"And Mosher Manufacturing Company, acting by its affiant, its treasurer and duly constituted agent, and without in any way waiving any right against said railway company, hereby claims a mechanic's and materialman's lien upon the said real estate, and against the said plant, and machinery and buildings, and improvements, to the extent of its said account and interest thereon."

On January 8, 1921, appellant filed suit in the district court of Dallas county against the pipe line company to recover the balance of $11,764.11 due upon its account and to foreclose its materialman's lien. The insolvency of the pipe line company was alleged, and the appointment of a receiver was asked. Upon this petition a receiver was appointed on January 15, 1921, who qualified. On April 22, 1922, a decree was entered in the receivership proceedings which gave judgment in favor of appellant for said sum of $11,764.11, with interest and foreclosure of its lien against the real estate and plant of the pipe line company and the net proceeds of the sale thereof. The decree discloses that the receiver had realized $8,670 from the sale of the plant and had collected on account of other assets of the company the further sum of $1,473.18, making a total of $10,043.18 realized upon all of the assets of the company.

The claims of various interveners was established and classified as general claims. The claim of appellant was classified as a secured claim upon the proceeds of the sale of the plant. Its proportionate share of receivership expense and court costs was charged against the proceeds of the plant, leaving a net balance of $6,833.11 in that fund, and the same was ordered paid to appellant. Its proportionate share of the expense and costs was charged against the said sum of $1,473.18 realized by the receiver on account of other assets of the company, leaving a net balance in this fund of $1,174.15, which was ordered paid pro rata to the general creditors and amounted to approximately 11 per cent. of the amount of the general claims.

After allowing all credits, there remains due appellant upon the contract price the sum of $5,378.73, with 6 per cent. from June 1, 1920.

Upon trial without a jury judgment was rendered in favor of defendant.

## Opinion.

[1] An election of remedies arises· when one having two coexistent but inconsistent remedies chooses to exercise one, in which event he loses the right to thereafter exercise the other. Ordinarily, this rule is not difficult of application when the subsequent suit is against the same defendant as in the original action, but when the subsequent suit is against a third person the pertinency 'of the rule is sometimes obscure and difficult of application.

[2] The doctrine of election of remedies is an application of the law of estoppel, either in pais or of record. 9 R. C. L. 957; Bigelow on Estoppel (6th Ed.) 732; Ward v. Green, 88 Tex. 177, 30 S. W. 864. In our opinion the doctrine is applicable here and sustains the judgment of the trial court.

In the first place no importance is attached to the statement contained in appellant's affidavit fixing the materialman's lien and in its petition filed in the suit in Dallas county to the effect that the same was without prejudice to the claim against appellee and without waiving the same. The doctrine of election of remedies is not grounded upon the intention of the plaintiff and in a proper case will arise regardless of his intention and contrary thereto.

In its petition filed in the district court of Dallas county against the pipe line company appellant alleged that on January 9, 1920, it agreed in writing to furnish and sell to said company certain materials for the sum of $19,160, payable $4,500 in cash, $7,500 upon arrival of the material at Eastland, and the balance in 30 days thereafter; that it did furnish and deliver such material in pursuance of such contract; that certain of the material (referring to the shipments in April, 1920, of the three steel tanks) were shipped and bills of lading issued to shippers' order and drafts in the sum of $7,500 drawn, with the bills attached and forwarded for collection, and the drafts had been returned unpaid, together with the bills; that by collusion and private arrangement between the pipe line company and the agents of the railway company the material included in the April shipment had been delivered to the pipe line company without surrender of the bills and without appellant's consent; that all of the material was used by the pipe line company in the construction of its plant; that on October 22, 1920, it had fixed its materialman's lien to the extent of $11,764.11, the same being the balance due after allowing an admitted credit of $7,515.89 on account cash and freight paid by the pipe line company. The prayer of the petition was for the recovery of the balance due upon its debt and to establish and foreclose its said lien.

Upon that petition the court rendered judgment in favor of appellant against the pipe line company for the amount of its debt and foreclosed its "said mechanic's lien, which was filed for record in the mechanic's lien record in Eastland county, October 22, 1920," and, as stated above, classified appellant's claim as preferred and ordered the net proceeds of the property foreclosed upon applied to its payment.

[3, 4] At the time appellant brought its suit in the district court of Dallas county it had the choice of two remedies, viz.: It could ratify or waive the unauthorized delivery of the tanks to the pipe line company and sue for and recover of said company the balance due upon the contract price and foreclose its lien; or it could have sued the pipe line company and the appellee and held appellee liable for the amount of the drafts and obtained judgment against the pipe line company for the balance of the purchase price, and forclose its lien. Appellant elected to pursue the first remedy, and it cannot be said with certainty that its action in so doing was without prejudice to appellee. Had it pursued the latter remedy, the appellee, by being thus held, responsible to appellant for the amount of the drafts, would have been subrogated pro tanto to the right of appellant to that portion of the purchase price and could have maintained a cross-action and recovered over against the pipe line company. See Ry. Co. v. North Texas Grain Co., 32 Tex. Civ. App. 93, 74 S. W. 567. For aught the court knows appellee might have been able to completely indemnify itself by proper and timely proceedings over against the pipe line company.

But no such right accrued to appellee because of the exercise by appellant of its remedy first indicated. Had appellee intervened in the suit in Dallas county or brought a separate suit and set up its liability to appellant for the amount of its drafts and sought to establish the same as a claim against the estate, both the pipe line company, its receiver, and the general creditors could have defeated the same by showing that appellant had brought its action against the pipe line company and sought to hold it for the entire purchase price of the material furnished and to establish its materialman's lien. In this connection, Fowler v. Bowery Savings Bank, 113 N. Y. 450, 21 N. E. 172, 4 L. R. A. 145, 10 Am. St. Rep. 487, is in point. In that case John White made a deposit with the bank in trust for Elizabeth White. Subsequently they both died. Flynn was appointed executor of John White, and Fowler executor of Elizabeth White. White demanded of the bank payment of the deposit to him. He was told that the money

would be paid to him when he came with the passbook then in the possession of Flynn. A few days later Flynn presented the book to the bank, demanded the the same was paid to him, and the surrendered to the bank. Thereafter, upon the same day, White called upon the bank in reference to the deposit and was informed of its payment to Flynn. Thereupon White sued Flynn for the money and recovered judgment, but was unable to collect same. Thereupon White sued the bank. Recovery was denied, and in the course of the opinion it was said:

"After his demand of the deposit, and the payment of the money to Flynn, there were two remedies open to the plaintiff. He could sue the defendant as a debtor for the deposit and recover the amount thereof from it, or he could bring an action for money had and received to and for his use against Flynn, and recover it from him. But he was not entitled to both remedies at the same time or in succession, and by electing the one he would lose the other. By electing to sue the bank he would repudiate its payment to Flynn, and his claim would be that the debt had not in fact been paid. By suing the bank he would adopt and ratify the act of the bank in making payment to him, and his claim would be that the money due to him had in fact been paid to Flynn, and that Flynn had received it to and for his use. Such adoption and ratification of the payment would legalize the payment as between him and the bank, and thus discharge the bank. He could not occupy the position at the same time of claiming that the bank had paid his money to Flynn and yet that the bank was still his debtor. His election in this case to sue Flynn and thus to treat him as his debtor was not harmless to the bank, but in law may be presumed to have injured the bank unless it should now be held to be discharged by its payment to Flynn.

"After the plaintiff commenced this action against Flynn and thus ratified and adopted the payment by the bank to him, the bank could not, during the pendency of that action, have sued Flynn to recover back the money on the ground that it had been paid by mistake and received by him without authority, because it would have been a defense to such an action that the real owner of the fund had adopted and ratified the payment. But even if the mere commencement and pendency of the action by the plaintiff against Flynn would not have furnished such a defense, it is beyond doubt that if the bank should now bring an action against Flynn to recover back the money, he could successfully defend on the ground that the plaintiff had ratified and adopted the payment, and thus discharged the bank by the recovery of a judgment against him for the money paid as the real owner thereof.

"The two remedies, one against Flynn and the other against the bank, are not concurrent. If the two actions could not be prosecuted at the same time, they could not in succession. Nothing could be more inconsistent than an action against Flynn on the ground that money due to the plaintiff had been paid to him, and an action against the bank on the ground that it had not paid the deposit and still remained debtor therefor. If the money had been absolutely the money of the plaintiff, left on special deposit with the bank, then he could have pursued it money wherever he could trace it without his remedy against the bank. In such the plaintiff would not be barred of his right of recovery against the bank until he had either recovered his money or the value of the same. All his remedies would be consistent, being based upon the theory of a wrongful disposition of his property.

"So, too, where a trustee in breach of his trust disposes of his trust property, the beneficiary of the trust may pursue it or its proceeds wherever he can trace them, so far as the law will permit him to do so, without releasing the trustee. All his remedies in such a case are consistent and based upon the same theory, to wit, a breach of trust. But if a trustee is bound to pay money to a beneficiary as a debt due from him to the beneficiary, then if he makes payment to another person he has not paid the debt and the money paid is not in fact the property of the beneficiary. In such case the beneficiary may ignore the payment and sue the trustee as his debtor, or he may ratify and adopt the payment and sue the person receiving the money as his debtor; but he cannot do both. There is in such case a breach of trust, or not, as he may elect, and his election once effectually made is conclusive forever. Comyns, Digest, Elections, C. 2.

"If one wrongfully takes and sells personal property not belonging to him, the owner has the election to sue him for the proceeds as money had and received to and for his use, and thus ratify the sale, or he may pursue the property and recover it or its value. But he cannot do both, and is bound by his election. Pomeroy, Remedies, § 567 et seq."

In this connection, see, also, Terry v. Munger, 121 N. Y. 161, 24 N. E. 272, 8 L. R. A. 216, 18 Am. St. Rep. 803, and cases cited in note thereto where it is held that an election to bring an action ex contractu against one who has converted property upon an implied contract of sale precludes a subsequent action for conversion of the same property against other persons who participated in the same acts which had already been treated as constituting a sale of the property.

In the Texas case of Railway Co. v. North Texas Grain Co., above cited, the grain company sold a carload of oats to Perthuis which was shipped to Hitchcock, Tex. A shipper's order bill of lading was issued. Draft for the purchase price was drawn upon Perthuis to which the bill was attached. The draft was sent to Adoue & Lobit, bankers, who surrendered the bill to Perthuis without payment of the draft. Upon inspecting the oats Perthuis rejected same. The oats were thereafter damaged while in possession of the railroad company, and such company was subsequently guilty of converting same.

In the litigation subsequently arising between the parties the grain company obtained judgment against Adoue & Lobit, and the railway company; and Adoue & Lobit and

Perthuis had judgment against such company. The court held:

"The trial court erred in rendering judgment in favor of the grain company against the railway company. Having elected to hold Adoue & Lobit responsible for their negligence in failing to collect the draft, and for their unauthorized act in surrendering control over the oats to Perthuis, the grain company cannot complain of the conversion thereafter of the oats by the railway company. * * *

"As before stated, the trial court awarded judgment in favor of Adoue & Lobit and Perthuis against the railway company for the value of the oats in their undamaged condition, less the freight charges. The judgment should have been in favor of Adoue & Lobit alone for the value of the oats in their damaged state, less the freight, demurrage, and storage charges; the damage having occurred and the charges having accrued before the conversion. By becoming responsible to the grain company for the purchase price of the oats, the equitable right thereto passed to Adoue & Lobit, and they are the proper parties to complain of the conversion."

This case, it is true, did not involve the doctrine of election of remedies, but it supports the view that appellant by its exercise of the remedy asserted in the suit in Dallas county thereby affected the rights of appellee as against the pipe line company and deprived appellee of a remedy which it cannot now assert against the pipe line company; or if it could now successfully recover over against such company its judgment would be probably worthless.

The suit in Dallas county was based upon the contract of sale and for the contract price; also, to establish and foreclose the materialman's lien. It necessarily implied a ratification of the unauthorized delivery. The present suit is inconsistent with the former action because it repudiates such delivery, and in view of the effect upon appellee's rights wrought by the former action, we are of the opinion that it would be inequitable to permit appellant to resort to the remedy asserted in this action, and the doctrine of election of remedies applies.

This view is in our opinion strongly supported by the reasoning and decision in Ward v. Green, 88 Tex. 177, 30 S. W. 864. In that case Green loaned money to Burleson and Gray, taking their note and a mortgage upon land owned by the borrowers to secure payment. Gray sold his interest in the land to the Wards, taking their obligation to pay his half of the loan from Green. Green sued Burleson, Gray, and the Wards, seeking as against the Wards foreclosure only. Judgment and decree was rendered accordingly. At the foreclosure sale Green purchased for less than the judgment. Green then sued the Wards for the balance due, setting up their obligation to pay executed to Gray and his ignorance thereof at the time the first suit was filed. In disposing of the case Judge Brown said:

"The fact that Green did not know of the existence of the agreement between the Wards and Gray at the institution of the first suit, by which the former agreed to pay one-half of the note due to Green, is not material, for the reason, that if the information was in the possession of Green before judgment was rendered in that suit, he could have amended and set up that cause of action against the Wards. By failing to do so, the judgment is given the same effect as if he had known the fact before the suit was filed. * * *

·"The note from Burleson and Gray to Green must necessarily be the basis of any suit upon the agreement made by Ward Bros., and when an attempt was made to. collect the note and to enforce the lien, it devolved upon the plaintiff, if he desired to pursue the remedy upon the contract of the Wards to pay the note, that he should set it up in the suit filed upon that note; he could not, under the rules of proceeding in our courts, be permitted to divide up his claim against the Wards and enforce it in parts. Green had the right to select his remedy, either to sue Burleson and Gray upon the note, and to make the Wards parties in order to foreclose the lien upon the land, or in addition thereto, to set up the agreement made for his benefit between Gray and the Ward Bros., and ask judgment also upon that agreement against defendants Ward for half of the amount due on the note, with a foreclosure upon the land. He elected to pursue the former course; by that election he is bound, and is estopped by the judgment in that suit from recovering against the Wards. upon the agreement with Gray in this suit. As before said, Green was not compelled to accept the agreement of the Wards to pay the half of his note; he had the right to repudiate it, and rely upon his contract as he made it. Having so elected, he cannot be permitted thereafter to seek a remedy upon the note as supplemented by that agreement. Thomas v. Joslyn, 36 Minn. 1. There is much conflict in the authorities as to whether or not the agreement between Gray and the Wards became effective in Green's favor before he accepted it, and it is not necessary for us to decide that question here. It was his right to waive his remedy upon it, which he did by his election not to sue upon it.

"The action of Green may have put the Wards in a position to suffer loss which otherwise they could have avoided. If the agreement was not to be enforced, and the only question was whether or not they should lose the land without personal responsibility for the unpaid balance of the debt, it might have been considered wise to give up their interest in the land rather than to bid upon it the amount of the debt; whereas, if they had been notified that they were to be liable for half of what the land did not bring at public sale, they might have deemed it advisable to make the land bring the debt, or at' least its real value. We think, that after electing to resort to the land, and after it had been, sold under the judgment of foreclosure, Green should not be permitted to hold Ward Bros. liable for half of what remains unpaid."·

The various propositions presented by appellant are controlled by the rules announced. The only proposition to which specific reference need be made is the seventh, which reads:

"The railroad company delivered in its own wrong and the pipe line company wrongfully received the goods. They were tort-feasors liable severally for the $7,500. One was in no way concerned with the form of the proceedings against the other, and a judgment against one is no bar to a suit against the other."

[5, 6] We recognize the rule that in the case of active tort-feasors, jointly or severally liable, a suit and uncollected judgment based upon the tort, against one, does not bar a subsequent suit against the other; the remedies are consistent and may be concurrently or successively maintained until satisfaction has been finally had. McGehee v. Shafer, 15 Tex. 198; 1 Cooley on Torts (3d Ed.) 223 to 238. But that rule has no application here because appellant's first action was ex contractu and the present one is ex delicto; actions which are inconsistent. Furthermore, in the case of active tort-feasors there is no right of contribution between them; whereas, in the present case appellee would have had a right to recover over against the pipe line company had this action been first brought against it.

Being of the opinion that upon the facts of this case the doctrine of election of remedies applies, the judgment is affirmed.