**KROBAR DRILLING, L.L.C, Appellant**

v.

**Fred ORMISTON, Ormiston Family Properties, L.L.C. and Applied Machinery Corporation, Appellees.**

**No. 01–10–01016–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

May 3, 2012.

Farrell A. Hochmuth, Douglas D. D'arche, Baker & Hostetler LLP, Houston, TX, for Appellant.

Dennis M. Dylewski, James Kyle Treadway, Dylewski & Associates, P.C., Houston, TX, Marc J. Wojciechowski, Malcolm Deon Dishongh, Wojciechowski & Associates, P.C., Spring, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices HIGLEY and BROWN.

## OPINION

SHERRY RADACK, Chief Justice.

In this appeal, we consider whether a plaintiff who obtains a breach-of-contract judgment against one defendant is prohibited from later bringing tort claims against other defendants for the same damage after it is unable to collect on the breach-of-contract judgment. On the facts presented in this case, we reverse and remand.

## BACKGROUND

In an effort to upgrade one of its oil drilling rigs, Krobar Drilling, L.L.C. ["Krobar"] purchased a 1300–horsepower mud pump from Kenner Manufacturing, Inc. ["Kenner"]. The mud pump, which was manufactured in China, arrived in Texas in April 2007. Under the sales agreement, Krobar was responsible for the cost of shipping the mud pump to its drilling site in Riverton, Wyoming. After the mud pump arrived, however, Krobar agreed to allow Kenner to keep the mud pump in Texas to be used for demonstration purposes at the Offshore Trade Conference. In return, Kenner would pay to ship the mud pump to Wyoming after the conference.

During the time period that Kenner retained control over the mud pump, it was operating its business out of a warehouse in Katy, Texas, that was owned by Fred Ormiston. The mud pump was stored in Ormiston's warehouse. On July 5, 2007, Kenner was evicted from the warehouse for failing to pay rent in accordance with his lease with Ormiston. Thereafter, Ormiston exercised a landlord's lien and sold the property in the warehouse at auction. The mud pump was included in the seized property and was eventually sold at auction to Applied Machinery Corporation ["Applied"].

In November 2007, Krobar sued Kenner in contract for failing to deliver the mud pump. In September 2009, after a trial on the merits, Krobar recovered a judgment against Kenner for $274,237.24, which included the $175,000 purchase price of the mud pump, $62,487 for the cost of refurbishing a replacement pump, and $36,750.24 for expenses incurred by the delay, plus attorneys' fees.

After it was unable to collect on the judgment against Kenner, Krobar filed this suit against Ormiston, Applied, and Ormiston Family Properties, L.L.C., a corporation to which Ormiston had conveyed his assets, including the warehouse involved in this suit. The suit against Ormiston and Applied was based on tort claims, including conversion and causes of action under the Texas Theft Liability Act. *See* TEX. CIV. PRAC. & REM.CODE ANN.

§§ 134.001–.005 (Vernon 2005). The suit against Ormiston and Applied sought to recover damages in the amount of $274,237.24—the same amount obtained in the Kenner judgment.

The case went to trial before a jury in June 2010, and, at the close of Krobar's case, all defendants moved for a directed verdict based on the doctrine prohibiting a double recovery and the doctrine of judicial estoppel. The trial court granted the motion for directed verdict, and subsequently signed a final judgment that Krobar take nothing on its claims against Ormison, Ormison, L.L.C., and Applied. This appeal followed.

## PROPRIETY OF DIRECTED VERDICT

In three related issues on appeal, Krobar contends the trial court erred in granting the motions for directed verdict. Specifically, Krobar claims that (1) the doctrine of double recovery does not apply; (2) defendants waived the affirmative defense of double recovery; and (3) the doctrine of judicial estoppel does not apply.

### Standard of Review

■ When reviewing the grant of a directed verdict, we follow the usual standard for assessing the legal sufficiency of the evidence. See Hunter v. PriceKubecka, PLLC, 339 S.W.3d 795, 802 (Tex.App.-Dallas 2011, no pet.) (citing City of Keller v. Wilson, 168 S.W.3d 802, 821–28 (Tex. 2005)). We examine the evidence in the light most favorable to the party against whom the verdict was directed, and we determine whether there is any evidence of probative value to raise a material fact issue on the question presented. See Bostrom Seating, Inc. v. Crane Carrier Co., 140 S.W.3d 681, 684 (Tex.2004). We credit favorable evidence if reasonable jurors could and disregard contrary evidence un-less reasonable jurors could not. See Hunter, 339 S.W.3d at 802 (citing City of Keller, 168 S.W.3d at 827). A directed verdict in favor of the defendant is proper when "a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery" or when the "plaintiff admits or the evidence conclusively establishes a defense to the plaintiff's cause of action." Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc., 29 S.W.3d 74, 77 (Tex.2000); see also B & W Supply, Inc. v. Beckman, 305 S.W.3d 10, 21 (Tex. App.-Houston [1st Dist.] 2009, pet. denied) ("A directed verdict is warranted when the evidence is such that no other verdict can be rendered and the moving party is entitled, as a matter of law, to judgment.") (quoting Byrd v. Delasancha, 195 S.W.3d 834, 836 (Tex.App.-Dallas 2006, no pet.)).

### Double Recovery

■ In its first issue, Krobar contends the trial court erred in granting a directed verdict on the basis of the doctrine prohibiting a double recovery. Specifically, Krobar contends that it is permitted to have multiple judgments, and that only the satisfaction of one judgment will bar further judgments.

■ The one-satisfaction rule applies to prevent a plaintiff from obtaining more than one recovery for the same injury. Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 7 (Tex.1991). The rule applies when multiple defendants commit the same act as well as when defendants commit technically different acts that result in a single injury. Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 390 (Tex.2000).

Here, we clearly have one injury—the loss of the mud pump and associated expenses—even though Kenner's liability is based in contract and Ormiston's and Applied's liabilities are alleged in tort. See

*Oyster Creek Fin. Corp. v. Richwood Investments II, Inc.,* 176 S.W.3d 307, 328 (Tex.App.-Houston [1st Dist.] 2004, pet. denied) (allowing settlement credit and finding one injury—impairment of rights under note—even though causes of action against separate defendants included one for tort and one for contract).

■ The question is whether Krobar may bring a second suit to recover for the single injury when the first judgment remains unsatisfied. We answer that question affirmatively. It is well-settled that an injured party may sue and proceed to judgment against all joint tortfeasors together, or any number less than all, or each one separately in successive suits; and that an unsatisfied judgment recovered against one of them will not operate as a bar to an action against another; provided, however, the plaintiff may finally satisfy only one judgment. *McGehee v. Shafer,* 15 Tex. 198, 203 (1855) ("It is admitted that, though a party may bring several actions and recover several judgments against joint trespassers, he can have but one satisfaction."); *Landers v. E. Tex. Salt Water Disposal Co.,* 151 Tex. 251, 248 S.W.2d 731, 734 (1952) ("Where the tortious acts of two or more wrongdoers join to produce an indivisible injury, that is, an injury which from its nature cannot be apportioned with reasonable certainty to the individual wrongdoers, all of the wrongdoers will be held jointly and severally liable for the entire damages and the injured party may proceed to judgment against any one separately or against all in one suit.").

In *T.L. James & Co., Inc. v. Statham,* 558 S.W.2d 865 (Tex.1977), Statham sued South Texas Independent Milk Producers Association ["STIMPA"] and its employee, Hinojosa, for damages caused by Hinojosa when he rear-ended Statham's truck, which was stopped at a highway construction site. *Id.* at 866. A jury found Hinojosa and STIMPA negligent and awarded damages of $15,000. *Id.* In accordance with the trial court's judgment, Hinojosa and STIMPA paid $15,000 into the registry of the court in satisfaction of the judgment. *Id.* Statham did not apply to remove the money from the registry of the court. *Id.* Statham then filed suit against the highway contractor's alleging negligence in failing to place a flagman at the highway construction site where the accident occurred. *Id.* The Court held that, because the judgment against Hinojosa and STIMPA had been satisfied when it was paid into the registry of the court, the "one-satisfaction rule" prohibited Statham from prosecuting a second suit against other wrongdoers who contributed to his injury. *Id.* at 868–69. Thus, *Statham* supports our conclusion that it is the *satisfaction* of a judgment, not the *obtaining* of a judgment, that bars further suits.

Nevertheless, Ormiston argues that the cases cited above are applicable only to joint tortfeasors, and are not applicable here because the liability of the alleged wrongdoers arises out of contract and tort. We disagree. As *Statham* makes clear, the "one-satisfaction rule" is applied to joint tort-feasors "because of the fundamental fact that there is but a single injury, in itself and of itself indivisible, and constituting an indivisible cause of action for which both in law and good conscience there can be but one satisfaction[.]" *Id.* at 869.

When, as here, it is alleged that a breach of contract and a tort caused a single injury, the rationale behind the "one-satisfaction" rule permitting successive suits against joint-tortfeasors until a judgment is satisfied is equally applicable.

■ We note that defendants' motion for directed verdict was based on judicial estoppel and double recovery or the "one-

satisfaction" rule. However, the gist of their argument on appeal relies on the "election-of-remedies" doctrine, which differs from the "one satisfaction rule." *See Horizon Offshore Contractors, Inc. v. Aon Risk Servs. of Tex., Inc.*, 283 S.W.3d 53, 59–60 (Tex.App.-Houston [14th Dist.] 2009, pet. denied). Ormiston cites several "election-of-remedies" cases to support its argument that, by electing to proceed to judgment against Kenner on its breach-of-contract claim, Kromar can no longer pursue its tort claims against Ormiston and Allied.

An election of remedies is the act of choosing between two or more inconsistent but coexistent modes of procedure and relief allowed by law on the same state of facts. When a party thus chooses to exercise one of them he abandons his right to exercise the other remedy and is precluded from resorting to it. *Custom Leasing, Inc. v. Tex. Bank & Trust Co.*, 491 S.W.2d 869, 871 (Tex.1973); *City of Glenn Heights v. Sheffield Dev. Co.*, 55 S.W.3d 158, 165 (Tex.App.-Dallas 2001, pet. denied). The election doctrine may constitute a bar to relief when "(1) one successfully exercises an informed choice (2) between two or more remedies, rights or states of facts (3) which are so inconsistent as to (4) constitute manifest injustice." *Sheffield*, 55 S.W.3d at 164 (quoting *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex.1980)). The doctrine is meant "to prevent a party who has obtained a specific form of remedy from obtaining a different and inconsistent remedy for the same wrong." *Fina Supply, Inc. v. Abilene Nat'l Bank*, 726 S.W.2d 537, 541 (Tex.1987). Remedies are inconsistent when one of the remedies results from affirming the transaction and the other results from disaffirming the transaction. *Foley v. Parlier*, 68 S.W.3d 870, 882 (Tex. App.-Fort Worth 2002, no pet.).

However, the election-of-remedies doctrine does not apply to "the assertion of distinct causes of action against different parties arising out of independent transactions with such parties. There is no election where the remedies are neither inconsistent nor repugnant." *Haskell v. Border City Bank*, 649 S.W.2d 133, 135–36 (Tex.App.-El Paso 1983, no writ) (citing *Lomas & Nettleton Co. v. Huckabee*, 558 S.W.2d 863 (Tex.1977)). "Where remedies pursued against different persons are repugnant and inconsistent, the election of one bars the other, but concurrent and consistent remedies may all be pursued until satisfaction is had. The bar of an election does not apply to the assertion of distinct causes of action against different persons arising out of independent transactions with such persons." *Custom Leasing, Inc.*, 491 S.W.2d at 871 (quoting 28 C.J.S. Election of Remedies § 8).

An election between remedies occurs, at the latest, when a party proceeds to final judgment on one claim with knowledge of an inconsistent claim or remedy. *Sheffield*, 55 S.W.3d at 165. Generally, it is the obtaining of a judgment on one theory or state of facts that precludes the ability to pursue other inconsistent remedies. *Id.* at 165, 167–68.

In *Sheffield*, a case cited by defendants, the plaintiff sued the city alleging that a zoning change passed by the city was an unconstitutional taking of his property. 55 S.W.3d at 164. He prevailed and was awarded damages based on the taking caused by the zoning change. *Id.* Sheffield then filed suit seeking a declaration that, under the zoning existing at the time he sought his permit would allow him to develop his property, i.e., that the zoning change did not affect him. *Id.* The court held as follows:

Sheffield's claim for permanent damages in *Sheffield I* is clearly inconsistent with Sheffield's ... claim in this case. There, Sheffield obtained a final judgment for permanent damages resulting from the City's taking of Sheffield's property through the passage of the new zoning ordinance. In this case, however, Sheffield claims that chapter 245 allows it to develop the subject property with the smaller sized lots that were allowed by the older ordinance, notwithstanding the City's zoning change.

*Id.* Thus, Sheffield's two lawsuits were inconsistent because, in the first he alleged and was awarded damages because the new ordinance was an unconstitutional taking, and in the second suit he alleged that the new ordinance had no effect on him and there was no taking. The court held that "because that remedy [electing to obtain damages based on a taking claim which resulted from the passage of the new ordinance] is inconsistent with obtaining declaratory and injunctive relief from the application of that ordinance, Sheffield's claims ... are barred by the election of remedies doctrine." *Id.* at 168.

In *B.L. Nelson & Assocs., Inc. v. City of Argyle*, another election-of-remedies case citied by defendants, the plaintiff sued the defendant for breach of contract, but did not allege a cause of action for quantum meruit. 535 S.W.2d 906, 910–11 (Tex.Civ. App.-Fort Worth 1976, writ refdn.r.e.). After the court of appeals held that the contract was void, plaintiff for the first time on appeal sought recovery of damages for quantum meruit. *Id.* The court held that by obtaining a judgment on breach of contract without pleading quantum meruit, the plaintiff had elected his remedy and could not seek quantum meruit for the first time on appeal. *Id.* That is, the plaintiff could not argue and obtain a judgment based on the existence of a contract, then, for the first time after judg-

ment, seek damages based on the non-existence of the same contract.

No such inconsistency is presented in this case. In the breach-of-contract case against Kenner, Krobar was required to prove that it purchased the mud pump from Kenner, but that Kenner failed to deliver it as promised. In the present suit against Ormiston and Allied, Krobar was required to show that it owned the mud pump and that Ormiston wrongfully seized and sold it to Allied. The second suit against Ormiston and Allied does not require repudiation of any facts relied on to prove breach of contract in the first suit. In fact, but for the purchase of the mud pump from Kenner, Krobar would have no claim against Ormiston and Allied. Thus, the second suit does not repudiate a fact necessary to prove the first suit, but in fact relies on a fact proved in the first suit, i.e., the purchase of the mud pump.

Defendants argue that it was inconsistent for Krobar to argue that Kenner was 100% liable for its damages in the first suit and that they are 100% liable for its damages in the present suit. We see no inconsistency. A single injury may be caused by multiple defendants committing the same act, as well as defendants committing technically different acts. *Crown Life Ins. Co.,* 22 S.W.3d at 390. Here, Krobar's position is that both Kenner and defendants are 100% liable for its loss, even though the breach of different duties—one imposed by contract and one in tort—gives rise to those liabilities. Different facts and different relationships give rise to the causes of action asserted against Kenner on the one hand and Ormisan and Allied on the other. "The bar of an election does not apply to the assertion of distinct causes of action against different persons arising out of independent transactions with such persons." *Custom Leasing,*

*Inc.,* 491 S.W.2d at 871 (quoting 28 C.J.S. Election of Remedies § 8). *See Am. Savings & Loan Ass'n of Houston v. Musick,* 531 S.W.2d at 581, 588–89 (Tex.1976) (holding that election of remedies did not apply because filing a trespass to try title action by the mortgagee/trustee-deed grantee was not inconsistent with its successful settlement of claim against the title insurer); *Custom Leasing, Inc. v. Texas Bank & Trust Co. of Dallas,* 491 S.W.2d 869, 871–72 (Tex.1973) (holding that election of remedies did not apply because finance company's obtaining final judgment on contract claims against individual who signed contracts himself and also allegedly forged execution of company on the contracts was not inconsistent with suing the bank that was the first victim of the forger and then allegedly made false representations to finance company so that it would refinance the forger's debt with the bank); *Liberty Mut. Ins. Co. v. First Nat'l Bank of Dallas,* 151 Tex. 12, 245 S.W.2d 237, 241–43 (1951) (holding that election of remedies did not apply because it was not inconsistent for company whose dishonest employee cashed company checks made payable to fictitious payees to recover under an insurance policy and then sue the bank that allegedly wrongfully honored the checks); *Heath v. Herron,* 732 S.W.2d 748, 750 (Tex.App.-Houston [14th Dist.] 1987, writ denied) (holding that election of remedies did not apply because legal-malpractice plaintiff's allegations in the underlying partnership dispute were consistent with his allegations in his malpractice action against his litigation attorney in the underlying case).

We sustain Krobar's first issue on appeal.

### Judicial Estoppel

■ In issue three, Krobar contends that the trial court erred by granting a directed verdict based on the doctrine of judicial estoppel. Specifically, Krobar contends that it has not taken inconsistent positions in the two lawsuits.

■ The doctrine of judicial estoppel "precludes a party from adopting a position inconsistent with one that it maintained successfully in an earlier proceeding." *Pleasant Glade Assembly of God v. Schubert,* 264 S.W.3d 1, 6 (Tex.2008) (quoting 2 Roy W. McDonald & Elaine G. Carlson, Texas Civil Practice § 9.51 at 576 (2d ed.2003)). The doctrine is not strictly speaking estoppel, but rather is a rule of procedure based on justice and sound public policy. *Id.; Long v. Knox,* 155 Tex. 581, 291 S.W.2d 292, 295 (1956). Its essential function "is to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage." *Pleasant Glade Assembly of God,* 264 S.W.3d at 6; *Andrews v. Diamond, Rash, Leslie & Smith,* 959 S.W.2d 646, 650 (Tex.App.-El Paso 1997, writ denied); *Hall v. GE Plastic Pac. PTE Ltd.,* 327 F.3d 391, 396 (5th Cir.2003) (noting basis for estoppel is the assertion of a position clearly inconsistent with a previous position accepted by the court); *Tenneco Chems., Inc. v. William T. Burnett & Co.,* 691 F.2d 658, 665 (4th Cir.1982) (finding "the determinative factor is whether the appellant intentionally misled the court to gain an unfair advantage"). This doctrine requires that: (1) a sworn, inconsistent statement be made in a prior judicial proceeding; (2) the party making the statement gained some advantage by it; (3) the statement was not made inadvertently or because of mistake, fraud, or duress; and (4) the statement was deliberate, clear, and unequivocal. *Galley v. Apollo Associated Servs., Ltd.,* 177 S.W.3d 523, 528–29 (Tex.App.-Houston [1st Dist.] 2005, no pet.); *see also Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship,* 323 S.W.3d 203, 218 (Tex.App.-El Paso 2010, pet. denied) (holding same).

The species of judicial estoppel alleged in this case is "based on the principle that

a party should not be permitted to abuse the judicial process by obtaining one recovery based first on affirming a certain state of facts, and then another recovery based on denying the same set of facts." *Metroflight, Inc. v. Shaffer*, 581 S.W.2d 704, 709 (Tex.Civ.App.-Dallas 1979, writ ref'd n.r.e).

Ormiston cites *Mosher Mfg. Co. v. Eastland, W.F. & G.R. Co.*, 259 S.W. 253, 258 (Tex.Civ.App.-El Paso 1924, writ ref'd), another election of remedies case, for the proposition that "[t]wo separate lawsuits for the same injury, one based in contract, the other based in tort, are *ipso facto* inconsistent." In *Mosher*, the plaintiff obtained a judgment against a consignee for the purchase price of three tanks, then sued the shipper for wrongful delivery of the tanks to the consignee. *Id.* at 254. The court held that by obtaining a breach-of-contract judgment against the consignee, the plaintiff had elected its remedy, and could not thereafter sue the shipper in tort. *Id.* at 255. However, as the court properly notes, the two suits were inconsistent because the breach of contract suit for the purchase price required the plaintiff to ratify the unauthorized delivery, while the tort suit against the shipper was based on the repudiating the unauthorized delivery. *Id.* at 257.

As discussed in our analysis of issue one above, there is no such inconsistency in the present case. Krobar alleged in its petition in the Kenner suit that "upon information and belief, Kenner did not instruct its landlord that the mud pump belong to Krobar and not to Kenner. If Kenner had relayed this information, the landlord may not have sold the mud pump pursuant to a purposed landlord's lien." However, this petition was not a sworn statement. Further, the allegation was made in connection with a fraud claim against Kenner, and Krobar did not recover on its fraud claim;

it recovered in breach of contract. Thus, the allegation in the petition did not benefit Krobar. Finally, the statement in the petition was not unequivocal, but was made upon information and belief. Because the statement in Krobar's petition in the Kennar suit was not an inconsistent sworn statement, did not benefit Krobar, and was not unequivocal, the doctrine of judicial estoppel does not apply.

We sustain issue three. In light of our dispositions of issues one and three, we need not address issue two, and decline to do so.

## CONCLUSION

Because the doctrines of double recovery and judicial estoppel do not entitle Ormiston and Allied to judgment as a matter of law, the trial court erred in granting a directed verdict in their favor. Accordingly, we reverse the judgment of the trial court and remand for further proceedings.