# NO. 12-18-00043-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *TYLER TITLE COMPANY, LLC D/B/A EAST TEXAS TITLE COMPANY, APPELLANT* | *§* | *APPEAL FROM THE* |
| *V.* | *§* | *COUNTY COURT AT LAW NO. 2* |
| *LISA COWLEY, APPELLEE* | *§* | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Tyler Title Company, LLC, doing business as East Texas Title Company, appeals from the trial court's judgment awarding damages to Lisa Cowley in her suit for damages resulting from a home purchase. In four issues, Tyler Title asserts it did not breach its duty to Cowley, the trial court erred in failing to apportion any responsibility to the lender and in awarding Cowley lost profits damages, and the election of remedies bars Cowley's recovery. We reverse and render in part and affirm in part.

## BACKGROUND

Kenneth Key and Key Development, LLC owned the homes at 522 West Dobbs Street and 836 Robertson Avenue in Tyler, Texas. In 1999, Key refinanced both properties with New Century Mortgage Company, and when he did so, the mortgage company attached the Robertson Street property address to both deeds of trust. Key defaulted on the mortgage on the Dobbs property. The lender, U.S. Bank, formerly New Century, attempted to foreclose on the property. However, due to the incorrect legal description, U.S. Bank unknowingly obtained title to the Robertson property. CR Capital attempted to purchase the Dobbs property from U.S. Bank. Again, believing it purchased the Dobbs property, CR Capital actually purchased the Robertson property.

Cowley contracted to purchase the Dobbs property from CR Capital. They agreed to use East Texas Title as the closing agent. The closing documents show the property located at 522 West Dobbs Street was being conveyed. However, the deed Cowley received contains the Robertson property's legal description. National Investor's Title Insurance Company issued the title insurance policy. Believing she owned the Dobbs property, Cowley took possession and made improvements totaling $22,750. Soon thereafter, Cowley received a letter from the Smith County Appraisal District alerting her to the problem.

Cowley brought suit against CR Capital and Tyler Title for fraud and negligent misrepresentation. She sued Tyler Title and National Investor's Title Insurance Company[1] for negligence, and she sued CR Capital for breach of contract. She later added Key and Key Development as defendants asserting causes of action to quiet title and for trespass to try title. Cowley asserted that she was the rightful owner of the Robertson Avenue property, but that Key and Key Development were collecting rent money from the property and were in constructive possession of the property. She requested judgment for title of the Robertson Avenue property and for lost rents and profits. Tyler Title denied liability and asserted that Cowley's damages were caused by her own acts or omissions and/or the acts and omissions of other entities. It also sought a declaration that Cowley is the current owner of the Robertson Avenue property. Key and Key Development filed a general denial.

The trial court struck Key and Key Development's answer as a sanction for discovery abuse and ordered the title to the Robertson property to be vested solely in the name of Cowley. The court ordered that the Robertson property was to be sold and appointed a receiver to do so, with the proceeds of the sale to be deposited with the court clerk for payment to Cowley.

Several months later, after a trial before the court, the trial court rendered judgment that Cowley recover damages in the amounts of $51,330 from Tyler Title and $34,220 from Tyler Title and CR Capital, jointly and severally.[2] Only Tyler Title filed a notice of appeal.

---

[1] Cowley's claims against National Investor's Title Insurance Company were settled and severed.

[2] The trial court did not file findings of fact and conclusions of law. However, it commented on the record that there was no evidence of fraud.

In its first issue, Tyler Title asserts that the trial court erred in determining that Tyler Title breached its duty to Cowley by failing to identify the error in the documentation which resulted in a conveyance of the Robertson property rather than the Dobbs property. It argues that it closed the transaction based on the deed record CR Capital said it was conveying to Cowley.

## Standard of Review

A party who challenges the legal sufficiency of the evidence to support an issue upon which it did not have the burden of proof at trial must demonstrate on appeal that there is no evidence to support the adverse finding. *G.D. Holdings, Inc. v. H.D.H. Land & Timber, L.P.*, 407 S.W.3d 856, 860 (Tex. App.−Tyler 2013, no pet.). When reviewing a no evidence issue, we determine whether the evidence at trial would enable reasonable and fair minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In making this determination, we must credit favorable evidence if a reasonable finder of fact could and disregard contrary evidence unless a reasonable finder of fact could not. *Id*. If there is any evidence of probative force to support the finding, i.e., more than a scintilla, we will overrule the issue. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005).

When a party challenges the factual sufficiency of the evidence supporting a finding for which he did not have the burden of proof, we may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). In reviewing the factual sufficiency of the evidence, we must examine the entire record, considering both the evidence in favor of, and contrary to, the challenged findings. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998); *Cain*, 709 S.W.2d at 176. We are mindful that the trier of fact is the sole judge of the credibility of the witnesses and weight to be given their testimony. *City of Keller*, 168 S.W.3d at 819.

## Applicable Law

The elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). A title company may be liable for its negligence in closing a real estate transaction. *Zimmerman v. First Am. Title Ins. Co.*, 790 S.W.2d 690, 694 (Tex. App.−Tyler 1990, writ denied). Generally, a title insurance company has no duty to examine title and to apprise the insured of any defects found therein. *Dixon v. Shirley*, 558

S.W.2d 112, 116 (Tex. Civ. App.−Corpus Christi 1977, writ ref'd n.r.e.). A title insurance company undertakes its examination of the condition of a property's title only to ascertain its risk in issuing a title insurance policy. *Tamburine v. Ctr. Savs. Ass'n*, 583 S.W.2d 942, 948-49 (Tex. Civ. App.−Tyler 1979, writ ref'd n.r.e.).

In the context of issuing a policy of title insurance, "closing the transaction" means the investigation made on behalf of a title insurance company before the actual issuance of the title policy and to determine proper execution, acknowledgment, and delivery of all title instruments necessary to consummate a transaction. TEX. INS. CODE ANN. § 2501.006(a) (West 2009). A title insurance company has no obligation to "close a transaction" if it is not prepared to issue the title policy contemplated by the transaction. *Boenker v. Am. Title Co.*, 590 S.W.2d 777, 779 (Tex. Civ. App.−Houston [14th Dist.] 1979, no writ). In determining whether to issue the title policy, the title company must accept the title and insure it as it is, or reject it. *Dixon*, 558 S.W.2d at 116-17.

In its capacity as an escrow agent, a title insurance company may also "close" the business transaction for which title insurance is obtained. *See Tamburine*, 583 S.W.2d at 949. An escrow agent has the duty to follow the agreed terms of the underlying contract and the absolute duty to carry out the terms of the agreement creating the escrow agency. *Watkins v. Williamson*, 869 S.W.2d 383, 387 (Tex. App.−Dallas 1993, no writ).

## Analysis

Celia Flowers, owner of Tyler Title, testified at the hearing. She stated that the parties' contract, which described the property as 522 West Dobbs Street, was the title commitment order. She explained that documents are filed in the courthouse based on a property description not a legal address, and Tyler Title does not follow street addresses, it uses the legal description. Further, Tyler Title does not "determine legal addresses that match property descriptions." She stated that a title commitment is not a representation of title. Based on the information in the contract, someone in the abstracting department found the legal description, ran the chain of title, and learned that record title was in Key Development, LLC. Tyler Title issued a title commitment on April 2, 2013, identifying Key Development, LLC as holding record title to the property and attaching a legal description that states the property is in block 305.

The record shows that, more than a month before closing, an escrow officer employed by Tyler Title sent an email to Cowley stating that there are some title issues they need to clear up,

4

and they are working on them. The email referenced "Blk 305 Lot 9, 522 West Dobbs." A week later, the escrow officer sent an email to CR Capital stating "[t]he main problem is with the title not being in the seller's name. The rest of the issues should be taken care of when this is cleared up." Over a week later, another email indicated that Tyler Title told Cowley that they could not close due to title issues.

Thereafter, CR Capital supplied Tyler Title with the deed without warranty it received from U.S. Bank showing that 522 West Dobbs Street is recorded in the name of CR Capital. On May 13, 2013, Tyler Title issued a second title commitment which identified CR Capital as holding record title to the property. The attached legal description is the same description found in the special warranty deed from CR Capital to Cowley and in the deed without warranty from US Bank to CR Capital. This legal description references block 302. It is not the same legal description contained in the first commitment. Both commitments were sent to Cowley and CR Capital before closing. Three days after the second commitment issued, the escrow officer emailed Cowley saying, "all requirements have been cleared and we are good to close." Upon closing, the Robertson property conveyed to Cowley, not the Dobbs property. Subsequently, a title policy was issued by the carrier, National Investor's Title Insurance Company, for the Robertson property.

Flowers testified that, at closing, Tyler Title was not aware of the discrepancy between the street address and the legal description and did not realize the property description attached to CR Capital's deed was not 522 West Dobbs Street. Flowers further testified that no one at Tyler Title realized the contract did not cover 522 West Dobbs Street, and Tyler Title never rejected the title commitment order for 522 West Dobbs. Flowers explained there was never a deed to CR Capital on the Dobbs Street property.

About six weeks after closing, the escrow officer emailed CR Capital regarding the legal description for the property. She explained that the "deed into you dated 3/14/13 states 522 Dobbs Street but the legal attached describes 836 Robertson Ave." Two months after closing, a different Tyler Title employee explained the problem and its source, the 1999 refinance, in an email to CR Capital.

We conclude that the evidence is both legally and factually sufficient to support the trial court's determination that Tyler Title breached its duty to Cowley. The record shows that Cowley and CR Capital entered into a contract pursuant to which Cowley was to purchase the property located at 522 West Dobbs. Their contract was an order for a title commitment on 522 West

5

Dobbs. During its investigation, Tyler Title determined that CR Capital did not hold title to the Dobbs property. CR Capital could not sell what it did not own. Further, the legal description attached to CR Capital's deed, which Tyler Title relied on, referenced block 302 while the emails and some closing documents referenced block 305.

After this revealing investigation, Tyler Title was under no duty to close the transaction. *See **Boenker***, 590 S.W.2d at 779. Although it proceeded, Tyler Title did not issue a title policy on 522 West Dobbs, the policy contemplated by the transaction, or reject the order. *See **Dixon***, 558 S.W.2d at 116-17. Tyler Title did not follow the terms of the underlying contract or carry out the terms of the agreement creating the escrow agency. *See **Watkins***, 869 S.W.2d at 387. Instead, at closing, the deed conveyed the Robertson property to Cowley, and a title policy was issued on the Robertson property. The evidence is legally and factually sufficient to support the trial court's determination that Tyler Title was negligent. *See **Haggar Clothing, Inc.***, 164 S.W.3d at 388; ***Cain***, 709 S.W.2d at 176. We overrule Tyler Title's first issue.

### PROPORTIONATE RESPONSIBILITY

In its second issue, Tyler Title asserts that the trial court erred in failing to apportion any responsibility to U.S. Bank. It argues that but for U.S. Bank's negligence in foreclosing upon and conveying the Robertson property rather than the Dobbs property, Cowley would have received title to the Dobbs property. It further argues that Tyler Title's failure to identify U.S. Banks's error does not rise to the level of a new and independent cause.

To recover on a negligence cause of action, a plaintiff must prove her damages were proximately caused by the defendant's breach of duty. ***Mason***, 143 S.W.3d at 798. The two elements of proximate cause are cause in fact and foreseeability. *Id*. Cause in fact is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred. *Id*. at 799. Cause in fact is not established where the defendant's negligence does no more than furnish a condition which makes the injuries possible. *Id*. The conduct of the defendant may be too attenuated from the plaintiff's injuries to be a substantial factor in bringing about the harm. *Id*.

U.S. Bank's predecessor erroneously attached the legal description for the Robertson property to the deed for the Dobbs property when Key refinanced in 1999. That error furnished

6

the condition making Cowley's injury possible more than a decade later. However, U.S. Bank's act was complete long before Cowley attempted to purchase the Dobbs property.

Cowley was damaged when she was prevented from purchasing the property she contracted to purchase. Her injury occurred when Tyler Title failed to either issue a title policy on the Dobbs property or reject the order for a title policy. U.S. Bank's error was too remote from the circumstances surrounding her injuries to constitute a legal cause of Cowley's injuries. *See Mason*, 143 S.W.3d at 799.

The proportionate responsibility statutes hold each party responsible only for that party's own conduct causing injury. *See Arceneaux v. Pinnacle Entm't, Inc.*, 523 S.W.3d 746, 748 (Tex. App.–Houston [14th Dist.] 2017, no pet.). The trier of fact determines the percentage of responsibility for each claimant, defendant, settling person, or responsible third party with respect to each person's causing or contributing to cause the harm for which relief is sought. TEX. CIV. PRAC. & REM. CODE ANN. § 33.003(a) (West 2015). Because U.S. Bank's actions were too attenuated to be a substantial factor in bringing about Cowley's harm, the trial court did not err in failing to apportion any responsibility to U.S. Bank. We overrule Tyler Title's second issue.


## DOUBLE RECOVERY

In its third issue, Tyler Title contends the trial court erred by awarding Cowley both the Robertson property and damages associated with the Dobbs property. It argues that this constitutes an impermissible double recovery. Specifically, Tyler Title argues that legal title to the Robertson property is a remedy only available if Cowley's deed accurately describes the property, whereas the damages associated with the Dobbs property are only available if the deed is inaccurate. Therefore, the argument continues, Cowley's assertion that she is the legal owner of the Robertson property is inconsistent with seeking to recover monetary damages associated with the Dobbs property. Tyler Title asserts that Cowley elected the remedy of title to the Robertson property and cannot also receive monetary damages for the Dobbs property.

Cowley asserted a suit to quiet title and for trespass to try title against Key and Key Development seeking title to and possession of the Robertson property. Cowley moved for sanctions against Key and Key Development for discovery abuse and failure to comply with the trial court's pretrial orders. In an interlocutory order, the trial court granted the motion, struck Key and Key Development's answer, ordered that title to the Robertson property vests solely in

Cowley, and awarded her rental income generated by that property from the date of purchase until the date of final judgment.

Cowley asserted a cause of action for negligence against Tyler Title for its actions in connection with the Dobbs property and breach of contract against CR Capital, for which she requested the associated damages. After a trial before the court, judgment was rendered in favor of Cowley, and she was awarded damages associated with the Dobbs property. The prior interlocutory judgment against Key and Key Development merged into the final judgment against the remaining defendants, Tyler Title and CR Capital. *See H.B. Zachry Co. v. Thibodeaux*, 364 S.W.2d 192, 193 (Tex. 1963) (per curiam) (held that where an interlocutory order is rendered disposing of one defendant, that order becomes final, and there is a final judgment, when a subsequent order is rendered disposing of the remaining defendants).

An election of remedies is the act of choosing between two or more inconsistent but coexistent modes of procedure and relief allowed by law on the same state of facts. *Custom Leasing, Inc. v. Tex. Bank & Trust Co.*, 491 S.W.2d 869, 871 (Tex. 1973). When a party chooses to exercise one of them he abandons his right to exercise the other remedy and is precluded from resorting to it. *Id*. The doctrine is meant to prevent a party who has obtained a specific form of remedy from obtaining a different and inconsistent remedy for the same wrong. *Fina Supply, Inc. v. Abilene Nat'l Bank*, 726 S.W.2d 537, 541 (Tex. 1987). Remedies are inconsistent when one of the remedies results from affirming the transaction and the other results from disaffirming the transaction. *Krobar Drilling, L.L.C. v. Ormiston*, 426 S.W.3d 107, 113 (Tex. App.−Houston [1st Dist.] 2012, pet. denied).

However, the election of remedies doctrine does not apply to the assertion of distinct causes of action against different parties arising out of independent transactions with such parties. *Id*. There is no election where the remedies are neither inconsistent nor repugnant. *Id*. Here, Cowley's causes of action against Tyler Title and CR Capital regarding the Dobbs property were distinct from her causes of action against Key and Key Development. Her remedies did not apply to the same wrong. U.S. Bank's error in attaching the Robertson property's legal description to the Dobbs deed, and conveying the Robertson property instead of the Dobbs property, was a wrong done to Key and Key Development, not Cowley. Likewise, the actions of CR Capital and Tyler Title in connection with the conveyance of the Robertson property to Cowley wronged Key and Key Development. Although Cowley benefited from those errors, she obtained judgment

8

awarding her title to the Robertson property because Key was unsuccessful in his defense of that title. CR Capital's breach of contract and Tyler Title's negligence arose out of their actions in connection with Cowley's attempted purchase of the Dobbs property, a transaction independent from the Robertson property ownership issues caused by the 1999 legal description mix up. Therefore, the election of remedies doctrine does not apply in this case. *See id*. We overrule Tyler Title's third issue.

## LOST PROFITS

In its fourth issue, Tyler Title asserts the trial court erred in awarding lost profits to Cowley. It argues that she was awarded lost gross profits while the correct measure of damages is lost net profits. It further argues that there is less than a scintilla of evidence supporting this award.

Lost profits are damages for the loss of net income to a business. *Miga v. Jensen*, 96 S.W.3d 207, 213 (Tex. 2002). The calculation of lost profits damages must be based on net profits, not gross revenue or gross profits. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 n.1 (Tex. 1992). Net profits are defined as the difference between a business's total receipts and all of the expenses incurred in carrying on the business. *Atlas Copco Tools, Inc. v. Air Power Tool & Hoist, Inc.*, 131 S.W.3d 203, 209 (Tex. App.−Fort Worth 2004, pet. denied). Gross profits are the total sales revenue less the cost of the goods sold, no adjustment being made for additional expenses and taxes. *Gross Profit*, BLACK'S LAW DICTIONARY (10th ed. 2014). A claimant must demonstrate one complete calculation of lost profits. *Heine*, 835 S.W.2d at 85. If no evidence is presented to prove lost net profits, the trial court must render a take-nothing judgment as to lost profit damages. *Kellmann v. Workstation Integrations, Inc.*, 332 S.W.3d 679, 687 (Tex. App.−Houston [14th Dist.] 2010, no pet.); *Exel Transp. Servs., Inc. v. Aim High Logistics Servs., LLC*, 323 S.W.3d 224, 234-35 (Tex. App.−Dallas 2010, pet. denied); *Atlas Copco Tools, Inc.*, 131 S.W.3d at 209.

Because Tyler Title complains of an issue on which it did not have the burden of proof at trial, it must demonstrate that no evidence supports the lost profits finding. *See G.D. Holdings, Inc.*, 407 S.W.3d at 860. Cowley's husband testified that they anticipated renting the Dobbs property for $800 per month. There is no evidence that he deducted any amount for normal operating expenses from his gross profits calculation. Cowley presented no evidence of any costs associated with the property such as maintenance, repairs, taxes, or advertising.

9

The only objective fact in the record is that Cowley would have charged $800 a month if she had a renter, and she assumes that she would always have a renter. There are no objective facts, figures, or data showing expenses associated with renting the property. Without Cowley's costs deducted from the alleged rents, it is impossible to discern her net profits. *See Atlas Copco Tools, Inc.*, 131 S.W.3d at 209. Because Cowley showed only lost gross profit, she failed to provide competent evidence that she is entitled to recover lost profits. *See Heine*, 835 S.W.2d at 83 n.1. The evidence is legally insufficient to establish any amount of lost profits. *See id*. Further, because this is a situation "where no evidence establishes any amount of lost profit damages with reasonable certainty," a take-nothing judgment against Cowley is appropriate with respect to lost profit damages. *See ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010) (contrasting situation in which rendering of judgment is appropriate with situation where "competent evidence exists to establish *some* reasonably certain amount of lost profits—just not the particular amount awarded by the trial court" which requires remittitur or remand); *Exel Transp. Servs., Inc.*, 323 S.W.3d at 235. We sustain Tyler Title's fourth issue.

## DISPOSITION

We *reverse* the portion of the trial court's judgment ordering that Cowley recover $34,220 in lost profit damages and prejudgment interest of $6,745.51 from Tyler Title and *render* judgment that Cowley take nothing from Tyler Title on her claim for lost profits. Further, we delete the phrase "jointly and severally" from the second decretal paragraph in the trial court's judgment.

As *modified*, we *affirm* the remainder of the trial court's judgment.

BRIAN HOYLE
Justice

Opinion delivered April 10, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

APRIL 10, 2019

NO. 12-18-00043-CV

**TYLER TITLE COMPANY, LLC D/B/A EAST TEXAS TITLE COMPANY,**
Appellant
V.
**LISA COWLEY,**
Appellee

Appeal from the County Court at Law No. 2
of Smith County, Texas (Tr.Ct.No. 62,728-A)

THIS CAUSE came to be heard on the oral arguments, appellate record and the briefs filed herein, and the same being considered, it is the opinion of this court that there was error in the judgment of the court below. In accordance with this court's opinion of this date, the judgment of the trial court is **modified** as follows:

We **DELETE** that portion of the trial court's judgment awarding Lisa Cowley judgment against Tyler Title Company, LLC d/b/a East Texas Title Company in the amount of $34,220.00 for lost profit damages and prejudgment interest of $6,745.51.

We **RENDER** judgment that Lisa Cowley take nothing on her claim for lost profits against Defendant Tyler Title Company, LLC d/b/a East Texas Title Company.

We **DELETE** the phrase "jointly and severally" from the second decretal paragraph of the trial court's judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below is **AFFIRMED** as modified. It is further ORDERED that all costs of this appeal are hereby assessed against Appellant **Tyler Title Company, LLC d/b/a East Texas Title Company**; and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*