**Opinion issued August 11, 2022**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-20-00799-CV

————————————

## ARIEL MONTOYA AND OFELIA MONTOYA, Appellants

## V.

## AMCAP MORTGAGE, LTD, Appellee

On Appeal from the 155th District Court
Austin County, Texas
Trial Court Case No. 2019V-0152

## MEMORANDUM OPINION

Appellants Ariel and Ofelia Montoya challenge the trial court's summary judgment in favor of appellee AmCap Mortgage, Ltd. ("AmCap") in its mortgage foreclosure suit. The trial court's judgment allowed AmCap to elect either a nonjudicial foreclosure or a judicial foreclosure sale. On appeal, the Montoyas

raise five issues. In the first two issues, they challenge AmCap's standing. In the first issue, they assert that AmCap did not prove that it owned or held the Note. In the second issue they assert that the assignment of the deed of trust occurred after the lawsuit was filed. In their third issue, they argue that AmCap did not prove "privity to the deed of trust" as part of its judicial foreclosure claim. In their fourth issue, the Montoyas assert that AmCap did not demonstrate that it was entitled to invoke nonjudicial foreclosure as a mortgagee or mortgage servicer. In their fifth issue, the Montoyas contend that the trial court erred by rendering judgment allowing AmCap to use both judicial and nonjudicial foreclosure.

We affirm.

## Background

### I. Refinancing, Note, and deed of trust

Ariel Montoya refinanced his house in Sealy, Texas. On February 2, 2017, he signed a note ("Note") for a mortgage loan, in the amount of $144,229.00 plus interest. The Note identified the lender as AmCap, and it identified the address where payments should be made as a location in Houston, Texas. The Note provided that if Ariel Montoya failed to pay the full amount of each payment on the date due, the loan would be in default and the holder of the Note could accelerate it with 30 days' written notice. In the event of acceleration of the Note,

Ariel Montoya would be required to reimburse the costs and expenses, including reasonable attorneys' fees, incurred to enforce the Note.

The Note was secured by a deed of trust also signed on February 2, 2017.[1] Both Ariel and Ofelia signed the deed of trust, which identified both spouses as the "borrower[s]." AmCap was identified as the "lender," which the deed of trust defined as "any holder of the Note who is entitled to receive payments under the Note." The deed of trust also stated that "MERS," Mortgage Electronic Registration Systems, Inc., is a separate corporation acting "solely as a nominee for Lender" and "Lender's successors and assigns." MERS was the beneficiary of the

---

[1]    10.    UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument), dated that same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

deed of trust in its capacity as nominee for the lender and its successors and assigns.[2] MERS, however, held only bare legal title under the deed of trust, which expressly secured certain rights to the lender, including repayment of the loan and performance of other covenants in the security interest and the Note. Under the

---

[2] MERS is "an electronic mortgage registration system and clearinghouse that tracks beneficial ownerships in, and servicing rights to, mortgage loans." *Richardson v. CitiMortgage, Inc.*, No. 6:10cv119, 2010 WL 4818556, at *5 (E.D. Tex. Nov. 22, 2010). It is a "book entry system" as defined by Texas Property Code § 51.0001(1), which defines book entry system as "a national book system for registering a beneficial interest in [a] security instrument and its successors and assigns." Under Texas law, a book entry system, including MERS, is a mortgagee. *See* TEX. PROP. CODE § 51.0001(4). The Fort Worth Court of Appeals has described the nature and purpose of MERS:

> MERS was created for the purpose of tracking ownership interests in residential mortgages. *Mortg. Elec. Registration Sys. v. Young*, No. 2-08-088-CV, 2009 WL 1564994, at *4 (Tex. App.—Fort Worth June 4, 2009, no pet.) (mem. op.). Entities such as mortgage lenders subscribe to MERS and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages. *Id.* These members contractually agree to appoint MERS to act as their common agent on all mortgages they register in MERS. *Id.* When a mortgage is executed through a MERS member and registered in MERS, it is recorded in the real property records with MERS named on the instrument as nominee or mortgagee of record. *Id.* While the mortgage is in effect, the original lender may transfer the beneficial ownership or servicing rights on the mortgage to another MERS member, with MERS tracking these electronic transfers; these assignments are not recorded in the real property records. *Id.* If a MERS member assigns its interest in a mortgage to a nonmember, this assignment is recorded in the real property records, and MERS deactivates the loan within its system. *Id.* Thus, through MERS, interests in notes and liens can be transferred between members without assignment documents having to be recorded each time. *See id.*

*Robeson v. Mortg. Elec. Registration Sys., Inc.*, No. 02-10-00227-CV, 2012 WL 42965, at *5 (Tex. App.—Fort Worth Jan. 5, 2012, pet. denied) (mem. op.).

deed of trust, the Montoyas were required to make payments to the lender, and the lender had the right to certain remedies in the event of default. These remedies expressly included acceleration of the loan and the option to use the power of sale.

> 22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. . . . If the default is not cured on or before the date specified in the notice, Lender at its option . . . may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this [section] . . . including, but not limited to, reasonable attorneys' fees and costs of title evidence. . . .

(Original printed in bold type.)

The deed of trust described the Note as "in renewal and extension, but not in extinguishment" of a prior mortgage loan described in an attached exhibit, and it expressly denied that the secured debt was a home equity loan: "Loan Not a Home Equity Loan. The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution." (Original printed in bold type.)

## II.     Default, demand, and lawsuit

Ariel Montoya defaulted on the Note by failing to make payments. AmCap sent Ariel Montoya written notice of default on October 17, 2019. The notice

5

identified AmCap as the "owner and/or holder" of the Note and the "creditor/mortgagee" to whom the debt was owed. The notice stated the amount due, $10,351.17, and informed Montoya that he had until November 21, 2019, to cure the default. AmCap stated its intention to accelerate the maturity of the loan if Montoya failed to cure the default.

Montoya did not cure the default, and, on December 6, 2019, AmCap filed suit against both Ariel and Ofelia Montoya for breach of contract due to the breach of the Note and for, alternatively, judicial or nonjudicial foreclosure.[3] AmCap sought a judgment establishing the existence, validity, and amount of its lien on the house in Sealy, along with interest, court costs, and reasonable and necessary attorney's fees incurred enforcing the lien. AmCap did not seek a deficiency judgment and sought "to satisfy the judgment solely from the foreclosure proceeds."[4]

On January 23, 2020, MERS assigned the February 2, 2017 deed of trust that was executed by the Montoyas to AmCap. The assignment was signed by Amanda L. Avila on behalf of MERS, "as nominee for AmCap Mortgage, Ltd., its successors and assigns." The jurat stated that Avila acknowledged to the notary

---

[3]     Ofelia Montoya was served with the lawsuit on December 26, 2019, and Ariel Montoya was served with the suit on December 30, 2019.

[4]     The Montoyas filed counterclaims against AmCap and third-party claims against MERS, but they later nonsuited all of their counterclaims and third-party claims without prejudice.

that she was "authorized to execute this instrument on behalf of [MERS as nominee for AmCap] . . . ."

On May 1, 2020, AmCap accelerated the maturity of the loan and declared the entire balance due and payable in full. A payoff statement dated April 29, 2020, identified AmCap and listed its address as the same address designated in the Note as the location to send payments. The payoff statement indicated that the total amount due on the Note, through May 28, 2020, was $161,525.21. It also indicated a remaining escrow shortage due of $13,161.42 and attorney's fees of $3,600.

## III. Summary judgment

AmCap moved for summary judgment arguing that its evidence conclusively proved that Montoya breached the Note, AmCap was the proper party to enforce the deed of trust, and the amount of damages was liquidated. Included among its evidence was an affidavit from Amanda Avila in which she averred that she "was authorized by MERS to sign [the 2020 assignment] on its behalf."

The Montoyas responded to the motion for summary judgment with legal arguments. They did not provide any controverting summary judgment evidence.[5] Instead, they argued that the court lacked subject matter jurisdiction because AmCap filed suit prior to the execution of the 2020 assignment. They also argued

---

[5] In their response to the motion for summary judgment, the Montoyas stated that they "rely upon and incorporate by reference the pleadings, orders, and agreements from the clerk's record of this case and ask the Court to take judicial [notice] thereof."

that AmCap was required to elect either judicial or nonjudicial foreclosure and that the trial court could not properly render judgment affording AmCap an election. The Montoyas further argued that there was an unexplained gap in the chain of title because the 2020 assignment of the deed of trust does not identify whether MERS is acting as nominee for AmCap or one of its successors or assigns.

The trial court granted final summary judgment in favor of AmCap. In the judgment, the trial court made the following rulings:

1. A lien, evidenced by the recorded deed of trust on the Montoyas' house in Sealy, was fixed and established in the amount of $163,916.83 as of October 15, 2020 plus interest at the per diem rate of $17.083 from October 15, 2020 until satisfied.

2. AmCap was awarded judgment for $163,916.83 plus all court costs and reasonable and necessary attorneys' fees of $9,309.50 and contingent appellate attorney's fees.

3. AmCap's lien was foreclosed, and AmCap was authorized to proceed with foreclosure under the deed of trust "pursuant to Tex. Prop. Code § 51.002."

4. In the alternative, and at AmCap's election, AmCap or its successors and assigns were authorized "to request an Order of Sale issue to any sheriff or constable in the State of Texas to seize and sell the above-described Property the same as under execution in satisfaction of this Judgment against Ariel Montoya and Ofelia Montoya . . . ."

The Montoyas filed a notice of appeal, and the trial court entered an order setting appellate security and prohibiting AmCap from enforcing the final judgment so long as the Montoyas paid $1,750 per month into the registry of the

8

court or "until a subsequent order from a court of competent jurisdiction states otherwise."

**Analysis**

On appeal, the Montoyas raise five issues. The first two issues challenge AmCap's standing to sue. The first issue challenges AmCap's standing to sue on the Note and asserts that there was no evidence that AmCap owned or held the Note on the date it filed suit. The second issue asserts that AmCap lacked standing to sue for judicial foreclosure because the assignment of the deed of trust from MERS to AmCamp occurred after the lawsuit was filed. In the third issue, the Montoyas assert that AmCap did not provide sufficient evidence of its privity with the deed of trust to support the trial court's rendition of judicial foreclosure and that the assignment did not identify the party for whom AmCap was serving as nominee. In the fourth issue, the Montoyas assert that AmCap offered no evidence establishing that it was a mortgagee or mortgage servicer as defined by the Texas Property Code.

In the fifth issue, the Montoyas assert that the trial court erred by rendering judgment that "allowed for both judicial and non-judicial foreclosure."

**I.      Standards of review**

We review a trial court's summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). In doing so, "we take as true all evidence

9

favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). If the trial court does not state the grounds upon which it grants summary judgment, an appellate court will affirm the judgment if any of the grounds set forth by the movant is meritorious. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lujan*, 555 S.W.3d at 84. When a plaintiff moves for summary judgment on its own claim, it must conclusively prove all essential elements of its cause of action. *Rhône–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). A matter is conclusively proven if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Hall v. Sonic Drive–In of Angleton, Inc.*, 177 S.W.3d 636, 643–44 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (citing *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex. 1982)). A nonmovant can defeat a plaintiff's motion for summary judgment on his own claim by coming forward with evidence that creates a genuine question of material fact. *Lujan*, 555 S.W.3d at 84–85.

"A deed is subject to the same rules of interpretation and construction as a contract." *Cooke v. Morrison*, 404 S.W.3d 100, 111 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *see Luckel v. White*, 819 S.W.2d 459, 461–62 (Tex. 1991). "The construction of an unambiguous deed is a question of law for the court," which we review de novo. *Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017) (quoting *Luckel*, 819 S.W.2d at 461).

## II.  Standing

Standing is a constitutional prerequisite to suit and a component of subject matter jurisdiction. *Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020); *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). "The standing requirement derives from the Texas Constitution's provision for separation of powers among the branches of government, which denies the judiciary authority to decide issues in the abstract, and from the open courts provision, which provides court access only to a 'person for an injury done him.'" *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484 (Tex. 2018) (quoting TEX. CONST. art. I, § 13); *see also In re Abbott*, 601 S.W.3d 802, 807 (Tex. 2020) (orig. proceeding) (per curiam) (stating that standing requirement in Texas parallels federal test for Article III cases-and-controversies standing).

Whether a court has subject-matter jurisdiction is a question of law. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). "A court

11

has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it." *Heckman*, 369 S.W.3d at 150. "In Texas, the standing doctrine requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court." *Id.* at 154.

Although standing is commonly raised in a plea to the jurisdiction, *see Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000), in this case, the Montoyas challenged AmCap's standing in response to AmCap's motion for summary judgment. Because this appeal arises from the trial court's grant of summary judgment, we consider whether the trial court properly rendered summary judgment in light of the Montoyas' arguments about standing. In determining whether standing exists, we will consider the pleadings and the summary judgment evidence. *See, e.g.*, TEX. R. CIV. P. 166a(c); *Lujan*, 555 S.W.3d at 84.

## III. Notes, liens, and foreclosure, generally

When a debt is "secured by a note, which is, in turn, secured by a lien, the note and lien constitute separate obligations." *Aguero v. Ramirez*, 70 S.W.3d 372, 374 (Tex. App.—Corpus Christi 2002, pet. denied). "Texas law differentiates between enforcement of a promissory note and foreclosure." *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03-11-00644-CV, 2012 WL 3793190, at *4 (Tex. App.—Austin Aug. 30, 2012, pet. denied) (mem. op.). The Texas courts have

12

"rejected the argument that a note and its security are inseparable by recognizing that the note and the deed-of-trust lien afford distinct remedies on separate obligations." *Id.* at \*3. A suit to enforce a recourse note, like the Note in this case, is "a personal action against the signatory and requires a judicial proceeding." *Id*. at \*4. "Foreclosure is an independent action against the collateral," which may, upon proper proof, "be conducted without judicial supervision." *Id.*

When construing the terms of a note or deed of trust, we must read the documents together when they are executed as part of the same transaction. *See Jim Walter Homes, Inc. v. Schuenemann*, 668 S.W.2d 324, 327 (Tex. 1984) ("[I]n order to ascertain the entire agreement between contracting parties, separate documents executed at the same time, for the same purpose, and in the course of the same transaction are to be construed together."). In addition, "the rule in Texas is that the mortgage follows the note," therefore a party who owns or holds the note is entitled to foreclose on property even in the absence of a valid assignment. *See EverBank, N.A. v. Seedergy Ventures, Inc.*, 499 S.W.3d 534, 541 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing *Kiggundu v. Mortg. Elec. Registration Sys. Inc.*, 469 Fed. App'x 330, 332 (5th Cir. 2012) ("It was sufficient for the Bank of New York to establish that it was in possession of the note; it was not required to show that the deed of trust had been assigned to it."), and *Antony v. United Midwest Sav. Bank*, No. H–15–1062, 2016 WL 914975, at \*3 (S.D. Tex. Mar. 10,

2016) (mem. op.) ("Even if the assignment of the Deed of Trust from MERS to Flagstar was void, the record shows that Flagstar was the holder of the Note at foreclosure and had standing to foreclose on that basis.")).

## IV.   Issues related to standing and sufficiency of summary judgment proof

The first two issues challenge AmCap's standing to sue for breach of the Note and for judicial foreclosure or to invoke the power of sale in a nonjudicial foreclosure. Because AmCap's uncontroverted summary judgment proof demonstrates that it was the owner and holder of the Note, we conclude that AmCap had standing to sue for breach of the Note and for judicial foreclosure. Because AmCap meets the definition of a lender and mortgage servicer, and under the express terms of the deed of trust, AmCap alternatively had standing to pursue nonjudicial foreclosure.

### A.   AmCap has standing to sue for breach of the Note.

"To recover on a debt due under a promissory note, a lender must establish that the note in question exists, the debtor executed the note, the lender is the holder or owner of the note, and a certain balance is due and owing on the note." *Martin v. New Century Mortg. Co.*, 377 S.W.3d 79, 84 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *Wells Fargo Bank, N.A. v. Ballestas*, 355 S.W.3d 187, 191 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (quoting *Cadle Co. v. Regency Homes, Inc.*, 21 S.W.3d 670, 674 (Tex. App.—Austin 2000, pet. denied)); *Austin v.*

*Countrywide Homes Loans*, 261 S.W.3d 68, 72 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *Leavings v. Mills*, 175 S.W.3d 301, 309 (Tex. App.—Houston [1st Dist.] 2004, no pet.). "Ownership of the note is an essential element of the right to collect amounts due on it." *Martin*, 377 S.W.3d at 84; *see Wells Fargo*, 355 S.W.3d at 191.

A true and correct copy of a note accompanied by sworn testimony proving ownership and possession of the instrument establishes a plaintiff's status as the owner and holder of the note, absent controverting evidence. *See Life Ins. Co. of Va. v. Gar-Dal, Inc.*, 570 S.W.2d 378, 380–81 (Tex. 1978); *Mandarino v. Sherwood Lane Invs., LLC*, No. 01-15-00192-CV, 2016 WL 4034568, at *3 (Tex. App.—Houston [1st Dist.] July 26, 2016, no pet.) (mem. op.); *see also Comerica Bank v. Progressive Trade Enters., Inc.*, 544 S.W.3d 459, 463 (Tex. App.—Houston [14th Dist.] 2018, no pet.). "Further, when one alleged to be the maker of a note does not deny the genuineness of his signature on the note, he is established as the maker of the note." *Comerica Bank*, 544 S.W.3d at 463–64.

AmCap attached a copy of the Note and an affidavit from Amanda Avila, who averred that she was the Vice President of Capital Markets for AmCap and a custodian of its records. Avila further averred: "A true and correct copy of the Note is attached as Exhibit A to this Affidavit. AmCap is the current owner of the Note and has the Note in its possession." The Note identifies AmCap as the original

15

lender. The Montoyas did not proffer any controverting summary judgment evidence. In the absence of controverting proof, we conclude that AmCap was the owner and holder of the Note and, therefore, had standing to sue for breach of the Note. *See Martin*, 377 S.W.3d at 84–85; *Ballestas*, 355 S.W.3d at 191.

**B.     AmCap has standing to sue for judicial foreclosure.**

The general rule in Texas is that a party seeking to foreclose on real property secured by a security instrument with a power of sale has the option either to sell the property in a nonjudicial foreclosure in accordance with the terms of the deed of trust or to bring a judicial foreclosure action. *See Bonilla v. Roberson*, 918 S.W.2d 17, 21 (Tex. App.—Corpus Christi 1996, no writ) ("A foreclosure sale may be instituted either by a judgment of the court establishing the debt and fixing the lien or by a valid exercise of a power contained in a deed of trust."); *see also Phillips v. Charles Schreiner Bank*, 894 F.2d 127, 129 n.1 (5th Cir. 1990) ("Texas law allows a mortgagee either to sell property in a non-judicial foreclosure pursuant to powers expressly granted in a deed of trust, Tex. Prop. Code § 51.002, or to bring a judicial foreclosure action.").[6]

Texas Rule of Civil Procedure 309 ("In Foreclosure Proceedings") provides the basic rule for judicial foreclosure judgments:

---

[6]     An exception, which does not apply in this case, arises when the loan being foreclosed is a home equity loan. *See* TEX. CONST., art. XVI, § 50(a)(6)(D); TEX. R. CIV. P. 735, 736.

16

> Judgments for the foreclosure of mortgages and other liens shall be that the plaintiff recover his debt, damages and costs, with a foreclosure of the plaintiff's lien on the property subject thereto, and, except in judgments against executors, administrators and guardians, that an order of sale shall issue to any sheriff or any constable within the State of Texas, directing him to seize and sell the same as under execution, in satisfaction of the judgment; and, if the property cannot be found, or if the proceeds of such sale be insufficient to satisfy the judgment, then to take the money or any balance thereof remaining unpaid, out of any other property of the defendant, as in case of ordinary executions.

TEX. R. CIV. P. 309. "Rule 309's requirement that the judgment allow the foreclosing party to recover his debt dictates that the party seeking judicial foreclosure establishes the existence of the debt and that he is entitled to recover it." *De La Garza v. Bank of N.Y. Mellon*, No. 02-17-00427-CV, 2018 WL 5725250, at \*7 (Tex. App.—Fort Worth Nov. 1, 2018, no pet.) (mem. op.).

To obtain a judicial foreclosure, a party must prove: (1) the existence of a financial obligation secured by real property, (2) a default on the loan, and (3) that the property subject to the lien is the same property the party seeks to foreclose. *See Maldonado v. CitiMortgage, Inc.*, 676 F. App'x 282, 284 (5th Cir. 2017); *Rinard v. Bank of Am.*, 349 S.W.3d 148, 152 (Tex. App.—El Paso 2011, no pet.) ("To obtain a judicial foreclosure, Bank of America was required to demonstrate that the note was a purchase money note, that some part of the purchase money is due and unpaid, and that the property subject to the lien is the same property on which it seeks to enforce the lien."); *see also De La Garza*, 2018 WL 5725250, at

*7 ("Accordingly, to be entitled to summary judgment for a judicial foreclosure under rule 309, a movant must prove (1) the existence of and some privity to a financial obligation—i.e., the note; (2) the existence of and some privity to the lien securing it—i.e., the deed of trust or security instrument; and (3) a default on the loan."); *e.g.*, 17 William V. Dorsaneo III et al., *Texas Litigation Guide* § 255.03[3][a] (2008) ("Judicial foreclosure is initiated when the creditor files an action alleging the existence of the indebtedness, default by the debtor, and the existence of the deed of trust or vendor's lien.").

The summary judgment evidence showed that AmCap had standing to seek judicial foreclosure. First, we have already concluded that the summary judgment evidence showed that AmCap was the owner and holder of the note. As the holder of the Note, and in light of the uncontroverted summary judgment evidence of default, there can be no question that a case or controversy that can be resolved by the court exists between AmCap and the Montoyas. *See Heckman*, 369 S.W.3d at 154. In addition, the summary judgment evidence includes the Note, deed of trust, assignment, and notices of default sent to the Montoyas, which refer to the same real property, demonstrating that the property subject to the lien is the same property upon which AmCap seeks to foreclose.

The Note expressly states that it is a "uniform secured note," and it states that the deed of trust signed on February 2, 2017, "protects the Note Holder from

18

possible losses" that might arise from the borrower's default. The Note also expressly provides that if, upon notice of acceleration, the borrower fails to pay all sums due, the "Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower." The deed of trust identifies "Lender" as AmCap, who was the original lender, and includes in the definition of "lender" "any holder of the Note who is entitled to receive payments under the Note.

The Montoyas argue that there is a lack of privity between AmCap and the deed of trust due to the inclusion of MERS as nominee for AmCap and its successors and assigns. But the summary judgment evidence plainly demonstrates that AmCap was the original lender, AmCap was the holder and owner of the Note at all times relevant to this suit, that AmCap was named in the deed of trust as Lender, and that the deed of trust expressly authorized the Lender to "invoke the power of sale and any other remedies permitted by applicable law."

We conclude that (1) AmCap showed a sufficient connection to the deed of trust, (2) the unrefuted summary judgment evidence (a) establishes AmCap's standing to pursue judicial foreclosure and (b) was sufficient to prove the elements necessary to prevail on summary judgment. *See Maldonado*, 676 F. App'x at 284; *Rinard*, 349 S.W.3d at 152; *see also EverBank*, 499 S.W.3d at 541; *Kiggundu*, 469

F. App'x at 331–32; *Antony*, 2016 WL 914975, at *3. We overrule the Montoyas'

second and third issues. *See* TEX. R. APP. P. 47.1.

### C. AmCap had standing to pursue nonjudicial foreclosure in the alternative.

In their fourth issue, the Montoyas argue that AmCap offered "no evidence

of whom [MERS] was acting as nominee for in assigning the Deed of Trust to

AmCap." We rejected a nearly identical argument in *Ybarra v. Ameripro Funding,

Inc.*, No. 01-17-00224-CV, 2018 WL 2976126, at *6 (Tex. App.—Houston [1st

Dist.] June 14, 2018, pet. denied) (mem. op.), and for the same reasons, we reject it

here.[7]

---

[7]     In *Ybarra v. Ameripro Funding, Inc.*, No. 01-17-00224-CV, 2018 WL 2976126, at
*6 (Tex. App.—Houston [1st Dist.] June 14, 2018, pet. denied) (mem. op.), the
appellants were represented by the same attorney who represents the Montoyas in
this appeal. Our opinion stated:

> Finally, the Ybarras challenge the assignment from MERS to U.S.
> Bank (as Trustee for the 2005–H Trust) as "completely unclear"
> because it failed to identify "for whom MERS [was] acting i[n] its
> capacity as the 'nominee' for Ameripro or [Ameripro's] successors
> or assigns." The Ybarras have presented no evidence or authority–
> nor have we found any–to support their position that MERS's
> assignment here was void ab initio on this basis.

> Federal courts addressing similar arguments have rejected them. *See
> e.g.*, *Bynane v. Bank of N.Y. Mellon*, No. H-15-2901, 2015 WL
> 8764272 at *5 (S.D. Tex. Dec. 15, 2015) ("Plaintiff argues that
> because MERS held the Note only as a nominee, and because the
> Assignment does not identify for whom MERS was a nominee,
> Plaintiff has validly pleaded that the Assignment in this case is
> void *ab initio* for lack of the essential elements of a contract, that is
> two identifiable real parties in interest. Plaintiff's argument is

20

The Montoyas also argue that AmCap's evidence did not prove that it was a mortgagee or mortgage servicer as defined by the Texas Property Code for the purpose of nonjudicial foreclosure. We disagree.

Chapter 51 of the Texas Property Code governs nonjudicial foreclosures. *See* TEX. PROP. CODE §§ 51.0001–.016. Under the statute, either a mortgagee or a mortgage servicer may invoke the power of sale conferred by a deed of trust. *Id.* §§ 51.002, 51.0025. The Property Code defines a "mortgagee" as "(A) the grantee, beneficiary, owner, or holder of a security instrument; (B) a book entry system; or (C) if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." *Id.* § 51.0001(4). A "mortgage servicer" is "the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument. A mortgagee may be the mortgage servicer." *Id.* § 51.0001(3).

The uncontroverted summary judgment evidence includes the Note, the deed of trust, and the assignment. The summary judgment evidence also demonstrates that AmCap is the last party to whom the security instrument was assigned of

without merit, factually and legally.") (internal citations omitted); *Morgan v. Gov't Nat'l Mortg. Ass'n*, No. H-15-1803, 2016 WL 3058301, at *4 (S.D. Tex. May 31, 2016) ("[T]he deed of trust indicates that MERS could exercise the rights granted to the lender by the deed of trust. Morgan agreed to this when he signed the deed of trust. There was no need to identify the lender in the assignment.") (internal citations omitted).

*Ybarra*, 2018 WL 2976126, at *6 (footnotes omitted).

21

record. Thus, AmCap is the mortgagee under the Property Code. *See id.* § 51.0001(4). The original Note and deed of trust instruct the Montoyas to send payments for the debt to AmCap. Thus, AmCap is also a mortgage servicer under the Property Code. *See id.* § 51.0001(3). The summary judgment evidence shows that AmCap had standing to pursue nonjudicial foreclosure under the Property Code.

The contractual language of the Note and deed of trust also demonstrate that AmCap had standing to invoke the power of sale in a nonjudicial foreclosure. The deed of trust identifies the "Lender" as "any holder of the Note who is entitled to receive payments under the Note." Avila's unchallenged affidavit states that "AmCap is the current owner of the Note and has the Note in its possession." Thus, AmCap was the holder of the Note and party entitled to receive payments under it. The express language of the Note and deed of trust authorize the lender to exercise the power of sale in the deed of trust. Clerk's R. 24 ("If Lender invokes the power of sale . . . ."); *see Stanley v. Wells Fargo Bank, N.A.*, No. 03-14-00376-CV, 2015 WL 5096534, at *3 (Tex. App.—Austin Aug. 25, 2015, pet. denied) (mem. op.) (holding that bank seeking to foreclose met the definition of "lender" in deed of trust and that deed of trust expressly granted lender the right to enforce the deed of trust).

22

Because we conclude that AmCap had standing to invoke nonjudicial foreclosure, we overrule the fourth issue.

## V.     Judgment and election of remedies

In their fifth issue, the Montoyas argue that the trial court erred by rendering judgment allowing AmCap to pursue both judicial and nonjudicial foreclosure. However, the judgment actually provided only that AmCap was entitled to invoke nonjudicial foreclosure or "in the alternative and at [AmCap's] election" it could proceed to a judicial foreclosure with a sheriff's sale. We conclude that the judgment, therefore, was disjunctive and not conjunctive.

"An election of remedies is the act of choosing between two or more inconsistent but coexistent modes of procedure and relief allowed by law on the same state of facts." *Krobar Drilling, L.L.C. v. Ormiston*, 426 S.W.3d 107, 113 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). "When a party thus chooses to exercise one of them he abandons his right to exercise the other remedy and is precluded from resorting to it." *Id.* (citing *Custom Leasing, Inc. v. Tex. Bank & Tr. Co. of Dall.*, 491 S.W.2d 869, 871 (Tex. 1973), and *City of Glenn Heights v. Sheffield Dev. Co.*, 55 S.W.3d 158, 165 (Tex. App.—Dallas 2001, pet. denied)). The election of remedies doctrine may bar relief "when (1) one has made an informed choice (2) between two or more remedies, rights, or states of facts (3) which are so inconsistent as to (4) constitute manifest injustice." *Bocanegra v.*

23

*Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex. 1980). "An election between remedies occurs, at the latest, when a party proceeds to final judgment on one claim with knowledge of an inconsistent claim or remedy." *Krobar Drilling*, 426 S.W.3d at 113. "Generally, it is the obtaining of a judgment on one theory or state of facts that precludes the ability to pursue other inconsistent remedies." *Id.*

More recently, courts have found that judicial and nonjudicial foreclosure are not such inconsistent remedies that a summary judgment movant must elect between them. *E.g.*, *Mitchell v. Ocwen Loan Servicing*, No. 4:15-CV-668-O, 2018 WL 10335466, at *2 (N.D. Tex. Feb. 22, 2018) (remedies not inconsistent); *Metcalf v. Wilmington Sav. Fund Soc'y, FSB*, No. 03-16-00795-CV, 2017 WL 1228886, at *4 (Tex. App.—Austin Mar. 29, 2017, pet. denied) (mem. op.) (finding it appropriate to ask for foreclosure by trustee's sale and, alternatively, by sheriff's sale); *see, e.g.*, *Smith v. Wells Fargo Bank N.A.*, No. 3:19-CV-02406-X-BT (N.D. Tex. Aug. 18, 2021), report and recommendation adopted sub nom. *Smith v. Wilson*, No. 3:19-CV-02406-X-BT (N.D. Tex. Sept. 2, 2021).

The Montoyas rely on a line of authorities that has held that when a creditor prosecutes a judicial foreclosure action to judgment, it has exercised an election between the two inconsistent remedies of judicial foreclosure and nonjudicial foreclosure by exercise of the power of sale in a security instrument. *See, e.g.*, *In re Gayle*, 189 B.R. 914, 916 (Bankr. S.D. Tex. 1995) ("An election of remedies must

be made between judicial foreclosure and nonjudicial foreclosure."); *In re Phillips*, 124 B.R. 712, 718 n.13 (Bankr. W.D. Tex. 1991) ("Judicial foreclosure and foreclosure under the power of sale in a deed of trust are remedies which cannot be concurrently prosecuted."); *Coffman v. Brannen*, 50 S.W.2d 913, 915 (Tex. App.—Amarillo 1932, no writ) (institution of judicial foreclosure constitutes election of remedies that precludes exercise of nonjudicial foreclosure); *Gandy v. Cameron State Bank*, 2 S.W.2d 971, 973 (Tex. Civ. App.—Austin 1927, writ ref'd) ("While there is some diversity of view among the decisions of other states upon the subject, the holding in this state is that judicial foreclosure and foreclosure under a power are remedies which cannot be prosecuted concurrently, and institution of the former constitutes an election of remedies and precludes subsequent resort to the latter.").

We agree, and we overrule the Montoyas' fifth issue.

## Conclusion

We affirm the judgment of the trial court.

Peter Kelly
Justice

Panel consists of Chief Justice Radack and Justices Kelly and Landau.